# Schoellhammer's Hatboro Manor, Inc. *v.* Local Joint Executive Board of Philadelphia, Appellant.

Argued January 5, 1967. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard H. Markowitz,* with him *Richard Kirschner, Louis H. Wilderman,* and *Wilderman, Markowitz & Kirschner,* for appellant.

*Richard G. Segal,* with him *Louis C. Johanson,* and *Fein, Criden and Johanson,* for Schoellhammer's Hatboro Manor, Inc., appellee.

*William A. Whiteside, Jr.,* with him *Fox, Rothschild, O'Brien & Frankel,* for Greater Philadelphia Restaurant Operators, Inc., appellee.

OPINION BY MR. JUSTICE JONES, June 29, 1967:

The Local Joint Executive Board of Philadelphia County, Local Unions Nos. 111, 115, 232 and 301 [Union], is an unincorporated labor organization which represents, as collective bargaining agent, hotel and restaurant employees in the Philadelphia area. Greater Philadelphia Restaurant Operators, Inc. [Association], is a Pennsylvania corporation which represents various restaurant and taproom operators and owners in the same geographical area.

The Association and the Union entered into a collective bargaining agreement on October 1, 1958.[1] Under the terms of that agreement, the Association recognized the Union as "the sole and exclusive collective bargaining representative of the employees . . . working in each establishment *now* operated and maintained by any of the EMPLOYERS or in any establishment *hereafter* operated and maintained by any of the EMPLOYERS,

---

[1] Under this agreement, the various restaurant and taproom operators and owners are termed "Employers".

in all matters relating to collective bargaining such as wages, hours of work, working conditions and adjustment of grievances." (Emphasis added). Article XVII, §1 of that agreement further provides: "*All* matters in controversy or dispute arising during the term of this agreement, except those matters specifically enumerated in the last sentence of this article,[2] shall be discussed between the Employer and the representatives of the Union in an effort to reach an amicable adjustment. In the event that the Employer and the Union are unable to adjust the controversy or dispute between them, then either party shall apply to the American Arbitration Association for the purpose of having the impartial arbitrator designated in accordance with its rules and regulations. The impartial arbitrator thus designated shall promptly hear and decide the grievance or matter in dispute and the decision thus rendered shall be final and binding upon both parties." (Emphasis supplied).

Louise Schoellhammer, trading as Schoellhammer's Brewery Tavern, [Louise Schoellhammer], is an "Employer" under the agreement and a member of the Association and operates, as an individual under the Fictitious Names Act,[3] a restaurant-liquor establishment on North Hancock Street in Philadelphia. Schoellhammer's Hatboro Manor, Inc., [Manor], is a Pennsylvania corporation which operates a restaurant-liquor establishment in Hatboro, Montgomery County. The Manor is not an Association member and, at the time of the collective bargaining agreement, was not a signatory or party to such agreement.

The crux of the controversy between the Association and Schoellhammer, vis-a-vis the Union is whether

---

[2] These exceptions are not presently pertinent.

[3] Act of May 24, 1945, P. L. 967, §1 et seq., as amended, 54 P.S. §28.1 et seq.

Schoellhammer, the Tavern operator, is, *in fact,* operating and maintaining the Manor so as to bring the Manor within the provisions of the collective bargaining agreement as an "establishment *hereafter* operated and maintained" by an Association member. To determine that issue, the Union, on October 13, 1964, made a demand in writing for arbitration[4] under the arbitration provisions of the agreement and for a submission of that issue to the American Arbitration Association.

On November 9, 1964, the Manor instituted an equity action in Court of Common Pleas No. 5 of Philadelphia County seeking injunctive relief against the Union, the Association and Louise Schoellhammer. The Manor alleged, inter alia, that "it [was] an entity unto itself" and "in no way connected with the business conducted and owned by the [Tavern]", that it was not a party to the bargaining agreement and that the Union's demand for arbitration was an attempt to force the Manor into contractual obligations to which it was never a party, directly or indirectly. Manor sought to restrain the Union, the Association and the Tavern from (a) arbitrating any matter involving Manor and its employees, (b) from doing any act which would compel Manor to recognize the Union as collective bargaining agent and (c) from doing any act to compel Manor to interfere with its employees' right to select their own representative for collective bargaining purposes.

The court below (the late President Judge ALESSANDRONI) granted a rule and, later, a preliminary

---

[4] This demand was addressed to "Schoellhammer's" at 1158 North Hancock Street, Philadelphia, the address of the Tavern. While the demand could have been more artistically drawn, nevertheless it is clear the demand was not upon Manor but upon Louise Schoellhammer, trading as the Tavern, a party to the collective bargaining agreement.

injunction restraining the parties from submitting the issue to arbitration.[5] From that decree this appeal was taken.

In deciding the instant controversy certain well settled principles must be kept in mind: (1) ". . . it has been stated over and over again that on an appeal from a decree awarding a preliminary injunction the Supreme Court will consider only whether any apparently reasonable grounds for the action of the court below existed, and the decree will be affirmed unless the record presents palpable legal error".: *Philadelphia v. Philadelphia Transportation Co.*, 386 Pa. 231, 236, 126 A. 2d 132 (1956) and authorities therein cited; (2) arbitration is a matter of contract, and, absent an agreement between the parties to arbitrate an issue, the parties cannot be compelled to arbitrate that issue: *United Steelworkers v. Westinghouse Electric Corporation*, 413 Pa. 358, 362, 363, 196 A. 2d 857 (1964); (3) it is for the court to determine on the basis of the contract provisions whether a party is bound to arbitrate and what issues, if any, it must arbitrate: *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S. Ct. 1318 (1962); *United Steelworkers, etc. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347 (1960); (4) recourse to arbitration as a means of resolving labor disputes is favored by the law (*Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S. Ct. 912 (1957); *United Steelworkers v. Warrior & Gulf Navigation Co.*, supra, 363 U.S. pp. 578, 584, 585) and there is à "federal policy of settling labor disputes by arbitration" (*United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S. Ct. 1358 (1960)).

---

[5] After Judge ALESSANDRONI's death, his opinion in support of his decree was adopted by the court below.

In the case at bar, the Union, seeking arbitration, alleges that an arbitrable issue has arisen under the collective bargaining agreement because that agreement has been violated by Louise Schoellhammer, a signatory to and an "Employer" under that agreement, in not applying the provisions of the agreement to the Manor and its employees which, allegedly, is an establishment now operated and maintained by Louise Schoellhammer.

Under the terms of the collective bargaining agreement, the Association, which represented, inter alia, Louise Schoellhammer, recognized the Union as the exclusive bargaining agent for all the employees of the Association members, if such employees worked in any establishment of any Association member which such Association member operated and maintained *at the time of the agreement or operated* and maintained *thereafter* during the term of the agreement. Beyond any question, this collective bargaining agreement, together with its arbitration provisions, bound the Association, the Union and Louise Schoellhammer.

An examination of the decree granting injunctive relief to the court below reveals its broad and sweeping nature: it restrains the Association, the Union and Louise Schoellhammer from (1) seeking to determine, by arbitration or otherwise, any matter involving the "rights, duties, liabilities and responsibilities of [Manor] and its employees, either directly or indirectly", (2) doing any act to compel Manor to recognize the Union as representative of Manor's employees for collective bargaining purposes or to compel Manor to require its employees to become members of the Union,[6] (3) doing any act to interfere with Manor's employees' right to select their own collective bargaining agent, (4) engaging in any unlawful acts and in-

---

[6] Manor's employees do not belong to any union.

terfering with Manor's business and, (5) doing any act indicating to the public that Manor and its employees have a labor dispute.[7] In justification of its grant of this injunctive relief, the lower court noted that Manor was not a signatory to the collective bargaining agreement and that, since arbitration is a matter of contract, Manor, which was not a party to the agreement, could not be compelled to arbitrate.

In determining the validity of this decree, initially, we must look to the factual posture of this litigation. Under the collective bargaining agreement, the Association, the Union and Louise Schoellhammer agreed to submit to arbitration "all matters in controversy or dispute", with certain presently irrelevant exceptions. A dispute arose between the Association and Louise Schoellhammer on the one part and the Union on the other part as to whether Louise Schoellhammer *was operating and maintaining the Manor* so as to bring the Manor's employees within the scope of the arbitration provision. The Union then demanded that this dispute be submitted to arbitration. Such demand was made not on Manor, who was not a party to the collective bargaining agreement, but on Louise Schoellhammer, who was a party to the agreement.

Upon such demand being made, Manor then instituted the instant litigation to prevent any arbitration of the dispute on the ground that it was not a party to the collective bargaining agreement. In *Goldstein v. International Ladies' Garment Workers' Union*, 328 Pa. 385, 391, 392, 196 A. 43 (1938), this Court decided that the issue whether the appellants in *Goldstein* were parties to a collective bargaining agreement under which arbitration was to be conducted was a matter for preliminary determination by the court and not by the

---

[7] This decree is couched in the identical language employed in Manor's prayer for relief.

arbitrator and described the right to have such issue decided by a judicial tribunal, rather than by arbitration, as a *constitutional right*. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S. Ct. 909 (1964), the Court stated: "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori*, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." (p. 547). In the case at bar, the matter was determined upon the pleadings and legal arguments. The Union did not offer any evidence that Manor occupied the status of a party to the collective bargaining agreement so as to compel it, under the arbitration provisions of such agreement, to submit to arbitration. Under such circumstances, under the rationale of *Goldstein* and *Wiley*, Manor's obligation to submit to arbitration was a matter for the court to determine in the first instance. The court below correctly determined on the record then before it that Manor was under no obligation to submit to arbitration. Had the court granted injunctive relief so limited and restricted, its decree would have to be affirmed without qualification.

However, the injunctive relief granted by the court below barred the Union, the Association and Louise Schoellhammer, all of whom as parties to the agreement had pledged themselves to arbitrate disputes arising during the lifetime of the agreement, from the performance of their contractual obligation. In our view, the court below could not thus negate the arbitration provisions of the collective bargaining agreement. Arbitration furnishes a procedure for the settlement of disputes between an employer and his employees to avoid the disturbance of an industrial peace and "[t]he

processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.": (*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S. Ct. 1347 (1960)).

The instant appeal presents two sides of a coin. On the one hand, judicial tribunals must recognize that arbitration, a matter of contract, should not be compelled of a party unless such party, by contract, has agreed to such arbitration, and on the other hand, where parties have agreed, by contract, to arbitrate, such an agreement must be enforced. The court below failed to differentiate these two well established legal concepts. On the record in the court below Manor clearly was not a party to the collective bargaining agreement, and, therefore, could not be compelled to submit to arbitration under the agreement and the determination whether Manor was a party was properly for the determination of the court and not the arbitration tribunal. However, the Association, the Union and Louise Schoellhammer, as parties to the collective bargaining agreement who had agreed to submit to arbitration all disputes arising under that agreement[8] were under a contractual obligation to submit this dispute to arbitration. The court below could not and should not have restrained the Association and Louise Schoellhammer vis-a-vis the Union from submitting this dispute to the arbitration tribunal.

The question whether Louise Schoellhammer is operating and maintaining the establishment in Montgomery County known as Schoellhammer's Hatboro

---

[8] The instant dispute was an arbitrable dispute under the agreement. In *United Steelworkers v. Warrior & Gulf Navigation Co.*, supra, pp. 584, 585, it was said: "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, . . . ."

Manor must be determined through the arbitration procedure. The finding of the arbitration tribunal on this question will bind the Association, the Union and Louise Schoellhammer, but it cannot bind the Manor. If the arbitration tribunal does resolve this question in favor of the Union, then the Union could, if it so chooses, proceed against the Manor in an appropriate judicial forum and it would then be within the province of the judicial tribunal to determine whether such finding is legally supportable and its effect upon Manor and its employees.

Under the factual posture presented on this appeal such circuity of action cannot be avoided if we are to give recognition to well settled principles in this area of the law.

To the extent that the court below by its decree restrained the parties to the collective bargaining agreement from proceeding to arbitration under such agreement, such injunctive relief must be denied.

The decree of the court below is affirmed. The matter is remanded to the court below to enter a decree consistent with the views expressed in this opinion. Each party to bear own costs.

Mr. Chief Justice Bell took no part in the consideration or decision of this case.

––––––––––

Dissenting Opinion by Mr. Justice Musmanno:

The Local Joint Executive Board of Philadelphia County, Local Unions Nos. 111, 115, 232 and 301, hereinafter to be referred to as the Union, and the Greater Philadelphia Restaurant Operators, Inc., to be identified in this opinion as the Association, entered into a collective bargaining agreement, a provision of which reads: "All matters in controversy or dispute arising during the term of this agreement, except those matters specifically enumerated in the last sentence of this article, shall be discussed between the Employer and

the representatives of the Union in an effort to reach an amicable adjustment. In the event that the Employer and the Union are unable to adjust the controversy or dispute between them, then either party shall apply to the American Arbitration Association for the purpose of having the impartial arbitrator designated in accordance with its rules and regulations. The impartial arbitrator thus designated shall promptly hear and decide the grievance or matter in dispute and the decision thus rendered shall be final and binding upon both parties."

A "controversy" did arise between the Association and Union. The Union, in accordance with the language just quoted, filed a demand for arbitration with the American Arbitration Association. However, before the arbitration machinery could turn a wheel, an establishment known as Schoellhammer's Hatboro Manor, Inc., dropped a monkey wrench into the mechanism by asking the Court of Common Pleas of Philadelphia County to issue an injunction against the Union's request for arbitration. The court of common pleas dropped another monkey wrench of its own into the arbitration machinery by granting the requested injunction. The Union appealed to this Court and a third monkey wrench went into the gears of the arbitration machinery, clamping it to a rusting motionlessness.

What is the explanation? The Association is made up of restaurant and taproom operators and owners in the Philadelphia area. One of these restaurant owners is the Schoellhammer's Brewery Tavern, which, of course, is bound by the arbitration procedure above outlined. The Schoellhammer's Brewery Tavern employs union labor but, the Union charges, the Schoellhammer's Brewery Tavern operates and maintains another establishment known as the Schoellhammer's Hatboro Manor, Inc., which does not employ union labor.

If the Schoellhammer's Brewery Tavern and the Schoellhammer's Hatboro Manor (for convenience, now referred to as Tavern and Manor) are both under the same management and control, the Manor is bound by the collective bargaining agreement entered into between the Union and the Association. That agreement specifically declares that the Association recognizes the Union as the exclusive collective bargaining representative of the employees "working in each establishment now operated and maintained by any of the EMPLOYERS or in *any establishment hereafter operated and maintained by any of the* EMPLOYERS, in all matters relating to collective bargaining such as wages, hours of work, working conditions and adjustment of grievances." (Emphasis supplied). This language is as clear as a flag in a parade that if any of the employers, of whom Tavern is admittedly one, takes over another establishment to operate and maintain, the employees in the second establishment must be represented by the Union in all matters relating to "wages, hours of work, etc., etc."

Tavern denied that it operated and maintained Manor. With the charge advanced by the Union and the denial filed by Tavern a dispute arose between the Union and the Association, the very type of controversy envisaged in the collective bargaining agreement which was to go to arbitration. By what right, by what type of reasoning, then, did the court of common pleas authorize Manor to strip the gears of the arbitration machinery that the Union and the Association had built up between them? Manor had no standing whatsoever as a party in the arbitration proceedings initiated by the Union. If, indeed, Manor was not being operated and maintained by Tavern, Tavern would naturally produce the evidence establishing the disconnection between Tavern and Manor, and Manor would have nothing to worry about.

But at the time of the Union's demand for arbitration, Manor was a stranger to the contract between the Union and the Association. For Manor, thus, to go into court to prevent arbitration between two other parties was nothing short of presumption and an interference with the contractual rights of those other parties. Here indeed was the classic illustration of the tail trying to wag the dog. The Union claimed that Manor was an appendage of Tavern. The Union did not ask for arbitration between it and Manor. It sought a peaceable solution of the controversy between it and Tavern. If Manor is not a tail of Tavern it will not be disturbed in its independent course, but it should not be allowed to be the dog in the manger to prevent the Union from demonstrating that it is actually part of the Tavern enterprise.

Suppose A and B living in Philadelphia agree that neither should deal with X living in New Jersey and that if a controversy arises between them, that controversy is to go to arbitration. A later charges that B is dealing with X and demands arbitration. Would X, in such a case, have any authority to go into court to demand an injunction against A in his dispute with B? Obviously he would not have any such right. How does this hypothetical case differ from the one actually before us?

The Majority says that Manor was not a signatory to the contract of arbitration, but no one is dragging Manor into arbitration. Manor may fly its independent flag; it will not be disturbed by the arbitration proceedings. The battle is drawn between the Union and the Association, the latter representing Tavern. If, of course, it should develop, in the arbitration proceedings that Manor is really part of Tavern, then naturally Tavern will be required to unionize the employees of Manor. But that is all in futuro. It is a matter of fact-finding, it is a matter of adjudication

by the arbitration panel. By preventing the arbitration, the court below decided the very issue which was before the arbitrators. The very purpose of the arbitration was to ascertain if Manor was a tail or another leg of Tavern. The Court below said this was not arbitrable. And this Court, by its majority, gave sanction to the destruction of a solemn agreement entered into between the Union and the Association. This Court, by approving the erroneous decision of the court below, has, in effect dismantled the arbitration machinery set up by the Union and the Association. It has knocked out the legs of the table at which the representatives of the Union and the Association desired to sit down and negotiate. This Court has cavalierly discarded the criteria handed down by the Supreme Court of the United States in litigation of this very character. In *United Steelworkers of America v. American Manufacturing Company,* 363 U.S. 564, the high court said: "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In those circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for."

The Majority apparently attempts to temper the severity of its decision by stating that the Union has the right to go to arbitration, but it adds a limitation which is like saying that a ball player has the right to bat for his team, but requiring that he stand at the plate without a bat. The Majority says the Union may arbitrate but that arbitration tribunal cannot bind Manor. The Majority here fails to see what the ball

game is about. The Union says that Manor is *part* of Tavern. If the arbitrators find that Manor is indeed part and parcel of Tavern, that ends the ball game so far as Manor is concerned because, under the collective bargaining agreement, Tavern has solemnly pledged that it will employ union labor "in any establishment hereafter operated and maintained" by Tavern. Of course, if the arbitrators find that Manor is not part of Tavern, the factual issue is also definitively resolved.

The Union charges that Tavern is the father of Manor, it is responsible for Manor, it speaks for Manor and if that be so, it must unionize Manor. The Union charges that Schoellhammer, which is the common name to both Schoellhammer's Brewery Tavern and Schoellhammer's Hatboro Manor, is working a subterfuge by putting a different suit on one of its children and, through costumery, denying parentage of that child, so that it will not be required by law (through contract and arbitration) to give that child what it promised under its agreement with the Union.

In *United Steelworkers of America v. Westinghouse Electric Corporation*, 413 Pa. 358, we said: "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

There is nothing in the agreement between the Union and the Association which can possibly exclude Tavern from its obligation to go to arbitration when, exhausted all amicable efforts to adjust any controversy, the Union seeks arbitration.

It is regrettable that this Court should, without of course desiring to do so, seem to restrict the freedom and the willingness of combatting parties to leave the

battlefield of hot contention, repair to a tree of deliberation, and under its comforting shade of mutual reflectiveness, reach a common understanding of reciprocal benefit. In *Wyoming Radio v. National Association of Broadcast Employees*, 398 Pa. 183, we said: "Arbitration is not a makeshift or a subterfuge. It is not an excuse for delay or a fan for the cooling off of tempers. It is a solemn and serious undertaking for the attainment of justice, and when parties engaged in a common enterprise agree to settle by arbitration all differences which may arise between them they are bound by their commitments as much as if they had entered into a stipulation in Court."

Tavern, through the Association, gravely agreed to settle by arbitration "all differences" which could arise between it and the Union. It should not be allowed, through the process of sending in a masked coadjutor, to chop down the tree of arbitration and peaceful reconciliation to the advantage of all parties concerned, and the general public involved.

Here was an ideal opportunity for the courts to knock a home run for friendly and peaceful arbitration. Somebody struck out. I do not believe it was I.