354 A.2d 576

LINCOLN UNIVERSITY OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION, Appellee in No. 348, Appellant in No. 353,

v.

The LINCOLN UNIVERSITY CHAPTER OF the AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, an Unincorporated Association on behalf of itself and all its members.

Appeal of the AMERICAN ARBITRATION ASSOCIATION, in No. 348, Appellee in No. 353.

Supreme Court of Pennsylvania.

Argued Jan. 20, 1976.

Decided April 7, 1976.

Markowitz & Kirschner, Paula R. Markowitz, Philadelphia, for appellant at No. 348 and appellee at No. 353.

Drinker, Biddle & Reath, J. Freedley Hunsicker, Jr., Philadelphia, for appellant at No. 353 and appellee at No. 348.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Lincoln University of the Commonwealth System of Higher Education [University] filed a complaint in equity against the Lincoln University Chapter of the American Association of University Professors [Association]. This complaint sought an injunction against the Association restraining it from proceeding in accordance with the terms of a collective bargaining agreement entered into by parties on September 28, 1973, with the arbitration of two disputes: (1) the denial of tenure to a Dr. Antonio Fuste; (2) the University's decision to appoint one, rather than all,[1] of its librarians to faculty status as of July 1, 1974.

 An evidentiary hearing was conducted to determine if a preliminary injunction should issue. Following this, the chancellor entered a decree enjoining arbitration of the librarian status dispute and refusing to enjoin arbitration of the Fuste tenure dispute. The Association filed an appeal challenging that portion of the court's de-

1. The record fails to specify the exact number of librarians employed by the University.

cree granting injunctive relief. The University filed an appeal challenging that portion of the decree refusing to enjoin arbitration of the Fuste tenure dispute.[2] Upon application of the University, the chancellor granted a stay of the Fuste arbitration pending resolution of the appeal by this Court. Both appeals were subsequently consolidated for argument before this Court and will be disposed of in this one opinion.

The background to this controversy is as follows:

Article XII of the September 28, 1973, collective bargaining agreement provides:

"12.1 The Committee on Promotions, Tenure, and Severance shall investigate the professional qualifications of the librarians. The Committee shall recommend to the President for faculty rank to commence in the 1974–1975 academic year those librarians deemed qualified. The faculty rank which the librarian may initially hold shall be finally determined by the President, and any appointments shall commence with the 1974–1975 academic year."

In accordance with this provision, the Committee on Promotions, Tenure and Severance investigated the professional qualifications of the librarians employed by the University and recommended to the University President, Dr. Herman R. Branson, that all of the librarians be accorded faculty rank. However, despite this recommendation, Dr. Branson, utilizing a priority ranking based upon student enrollment at the University,[3] deter-

---

2. A decree either granting or refusing a preliminary injunction, although it may be interlocutory in nature, is nevertheless appealable as a final order. See *Chester City School Authority v. Aberthaw Construction Company*, 460 Pa. 342, 333 A.2d 758 (1975), and the cases cited therein.

3. The priority ranking system adopted by Dr. Branson based the attainment of faculty status upon the growth in enrollment at the University. Thus, all librarians with Priority Ranking I would be accorded faculty status when the University's enrollment reached 1050 students; those with Priority Ranking II would attain faculty status when 1401 students were enrolled; those with Priority

mined that only one librarian would be granted faculty status for the 1974–1975 academic year.

On October 21, 1974, the Association served Dr. Branson with written notice that it wished to arbitrate the validity of his refusal to grant faculty status to all of the librarians. This request was in accordance with Section 14.3 of Article XIV of the collective bargaining agreement.[4] On December 5, 1974, the Association, seeking a mutually agreeable arbitrator, submitted a list of five prospective arbitrators to Dr. Branson. When no response was received by January 15, 1975, the Association filed a Demand for Arbitration with the American Arbitration Association setting forth the nature of the dispute as "the failure of the Administration to grant faculty rank to all of the librarians in accordance with the provisions of Article XII of the collective bargaining agreement." The Association, in its Demand for Arbitration, requested that "faculty rank be granted to all librarians retroactive to July 1, 1974 with appropriate salary adjustments."

While the librarian status dispute was developing, a Dr. Antonio Fuste, was formally notified that he would not have a contract offered him for the 1975–1976 academic year. Dr. Fuste, an Assistant Professor in the Spanish Language Department of the University for sev-

Ranking III would attain faculty status when 1751 students were enrolled; those with Priority Ranking IV would attain faculty status when 2801 students were enrolled; and finally, those librarians with Priority Ranking V would not be accorded faculty status until 3151 students were enrolled at the University.

4. Section 14.3 of Article XIV provides, in pertinent part:
"*Arbitration.* If the grievance is not suitably resolved in Step 3, LUC–AAUP [the Association] but not a member of the bargaining unit, may within thirty (30) University Calendar Days of the receipt of the written response in Step 3, notify the President of its intent to submit the grievance to binding arbitration. The parties shall have the right mutually to agree upon the arbitrator, but in the event they cannot so agree within fifteen (15) calendar days of receipt of the above notice, the matter shall, forthwith, be submitted to the American Arbitration Association . . .."

en years as of the date of receipt of the notification, was permitted to remain an Assistant Professor for the 1974–1975 academic year; the termination not taking effect until the 1975–1976 academic year.[5]

On December 13, 1974, in accordance with Section 14.3 of Article XIV of the collective bargaining agreement,[6] the Association submitted a list of five prospective arbitrators to Dr. Branson so that he might indicate his preference for an arbitrator to hear and resolve the dispute arising from the failure to grant faculty status to Dr. Fuste.[7] When no response in this regard was forthcoming from Dr. Branson, the Association, on January 15, 1975, filed a Demand for Arbitration (together with the aforesaid Demand for Arbitration of the librarian status dispute) with the American Arbitration Association. The nature of the dispute was averred to be "the failure of the Administration to grant tenure to Antonia Fuste (sic) in accordance with the provisions of the collective bargaining agreement and the faculty by-laws incorporated therein" and the relief requested was "that tenure be granted to Antonia Fuste (sic) retroactive to July 1, 1974 with appropriate salary adjustments."

5. This notification read as follows:
 "Professor Antonio Fuste
 621 South Harmony Road
 Newark, Delaware 19711
 Dear Professor Fuste:
 In a few days you will receive a contract for 1974–1975. We at Lincoln appreciate your positive efforts in behalf of the University's program. A careful analysis has convinced us, however, that a contract for 1975–1976 will not be offered you. We trust that by your having more than a full calendar year that you can find another position suitable to your interests and talents.
 Please consider this letter as formal notification at least of one year ahead that you will not receive a contract for 1975–1976. We regret the formal tone of this letter.
 
 Very sincerely yours,
 Herman R. Branson
 President."

6. See supra note 4.
7. It is not clear from the record whether the Association, as in the librarian status dispute, had previously served Dr. Branson with a demand for arbitration.

These demands for arbitration by the Association caused the University to seek the aforementioned equitable relief.

■■ It is well-settled that " 'arbitration' is a matter of contract, and, absent an agreement between the parties to arbitrate an issue, the parties cannot be compelled to arbitrate that issue." *Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Board of Philadelphia,* 426 Pa. 53, 58, 231 A.2d 160, 162 (1967). See also *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960). However, as stated in *Borough of Ambridge Water Authority v. J. Z. Columbia,* 458 Pa. 546, 328 A.2d 498, 500 (1974), quoting from *Mendelson v. Shrager,* 432 Pa. 383, 385, 248 A.2d 234, 235 (1968):

> " 'Settlements of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.' "

See also *Waddell v. Shriber,* 465 Pa. 20, 348 A.2d 96 (1975). Moreover, the settlement of labor disputes through arbitration is particularly favored, as the arbitration of labor disputes under collective bargaining agreements is "part and parcel of the collective bargaining process." *United Steelworkers of America v. Warrior & Gulf Navigation Company,* supra, 363 U.S. at 578, 80 S.Ct. at 1351.

■ Whenever one party to an agreement seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to two questions: (1) was an agreement to arbitrate entered into; and (2) does the dispute involved fall within the arbitration clause. *Independence Development, Inc. v. American Arbitration Association,* 460 Pa. 390, 333 A.2d 781 (1975); *Flightways Corporation v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d

184 (1975). Instantly the collective bargaining agreement, in Article XIV, does provide a four-stage procedure for the resolution of "grievances", with the final step being arbitration in accordance with the rules of the American Arbitration Association. We must, therefore, determine whether the librarian status and Fuste termination disputes are within the scope of the arbitration provision.

The term "grievance" is defined in the collective bargaining agreement as:

"[A]n allegation or complaint that there has been a violation, misinterpretation or improper application of the terms and conditions of this Agreement or the By-Laws of the Faculty of Lincoln University which have been incorporated into the Agreement; or of any complaint alleging improper, arbitrary or discriminatory enforcement of existing rules, regulations, practices, and/or procedures relating to wages, hours, terms and conditions of employment."

Excluded from the term "grievance" are:

"(i) Complaints relating to the merits of the dismissal or suspension of faculty members . . ..

"(ii) Complaints relating to the merits of appointment, reappointment, promotions, and tenure
. . ..

"(iii) Complaints relating to the merits of allegations of infringement of academic freedom . . .."

The University contends that both the librarian status and Fuste termination disputes relate to the "merits of appointment, reappointment, promotions, and tenure" and are thus not encompassed by the term "grievance" and, consequently, are disputes specifically excluded from the arbitration process.[8] We cannot agree.

8. It is specifically provided in Section 14.3 of Article XIV:
"Further, in matters relating to decisions regarding faculty status or academic freedom, the authority of the arbitrator shall extend only to the procedures followed and not to the merits of such decisions."

We believe the dispute concerning the faculty rank to be granted librarians relates not to the "merits" of Dr. Branson's decision to award faculty status to only one librarian but, rather, relates to the procedures utilized in his determination and the limitations imposed by the collective bargaining agreement upon the scope of his authority. The Association, while recognizing that "[t]he faculty rank which the librarian may initially hold *shall be finally determined by the President*" [Emphasis supplied],[9] nevertheless contends that Dr. Branson acted capriciously and in disregard of the procedures for selection set forth in the collective bargaining agreement when he unilaterally rejected the recommendations of the Committee on Promotions, Tenure and Severance and, instead utilized his own priority ranking system. The Association posits that, under the terms of the collective bargaining agreement, when the Committee recommended the grant of faculty status to all librarians, Dr. Branson was duty bound to accept this recommendation, with only the particular faculty rank accorded each librarian remaining for final determination by Dr. Branson. That is, the Association does not dispute the final authority delegated to Dr. Branson. The Association merely asserts that he was not free to invoke his own selection procedures and, by virtue of the Committee's recommendations, was obligated to appoint all librarians to some degree of faculty status. As only the "merits" of appointment, reappointment, promotions and tenure are excluded from the arbitration process, not questions relating to procedure and limitations upon authority, the librarian status dispute must be deemed subject to arbitration.

Similarly, we believe the Fruste termination dispute to be subject to arbitration. The Association does not question the authority of Dr. Branson to notify Dr.

9. See Section 12.1 of Article XII referred to earlier in this opinion.

Fuste that tenure was not being granted. Rather, the Association contends that the twelve month notice of termination given Dr. Fuste after Dr. Fuste had been an Assistant Professor at the University for seven years, was a procedurally defective means of denying Dr. Fuste tenure.

The Association points out that Article III, Paragraph 6 of the University By-Laws, incorporated by reference into the collective bargaining agreement, provides:

"All faculty members without permanent tenure who have been employed full time in the University in the rank of instructor, assistant professor, associate professor, professor, or any combination thereof, for a period of seven years shall be granted permanent tenure *upon appointment for the following year.*" [Emphasis supplied.]

The Association contends the twelve month notice of termination was tantamount to an appointment for the 1974–1975 academic year which, by the terms of the above provision, operated to grant Dr. Fuste tenured status. The University argues, however, that the twelve month notice of termination was required by the University By-Laws [10] and should not be considered the equivalent of appointment for the succeeding year.

We need not resolve this issue instantly for it is evident that a factual dispute exists which is within the coverage of the arbitration process. The dispute quite clearly goes not to the "merits" or the decision to terminate Dr. Fuste's employment but, rather, to the procedure used in implementing the termination.

■■ To be consistent with the general policy favoring the arbitration of contractual differences, we be-

---

10. Article III, Paragraph 2 of the University By-Laws provides: "Notification of non-reappointment or severance for the following academic year shall be made in writing by March 1 in the first two years of appointment, and in subsequent years a full twelve months prior to termination of service."

lieve an order enjoining arbitration of a particular grievance should not be granted unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute. Cf. *United Steelworkers of America v. Warrior & Gulf Navigation Company,* supra. We are not presented with this factual situation herein.[11]

The decree of the trial court in so far as it refused to enjoin arbitration of the Fuste tenure dispute is affirmed, and the decree in so far as it enjoined arbitration of the librarian status dispute is reversed.

The record is remanded for further proceedings consistent herewith.

Each side to pay own costs.

NIX, J., took no part in the consideration or decision of this case.

11. We note that, although the chancellor determined the librarian status dispute was not ripe for arbitration, this contention was not advanced by the University in its complaint seeking injunctive relief or in its appeal to this Court. Moreover, such a determination does not provide a proper basis for enjoining an arbitration as the question of the timeliness of a demand for arbitration "is not of interpretation of the agreement and not one of the existence or scope of the arbitration provision; it is thus outside the bounds of our review and its resolution must be left to arbitration." *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.,* 460 Pa. 260, 333 A.2d 184, 187 (1975).