**COST BROTHERS, INC.**

**v.**

**The TRAVELERS INDEMNITY COMPANY, Appellant.**

**No. 84–3466.**

United States Court of Appeals, Third Circuit.

Argued March 22, 1985.

Decided April 26, 1985.

Garth, Circuit Judge, dissented and filed an opinion.

Mark N. Suprenant (argued), David A. Scott, Thorp, Reed and Armstrong, Pittsburgh, Pa., for appellant; Milton M. Breitman, Levy, Schlesinger & Breitman, P.A., Roseland, N.J., of counsel.

Richard S. Crone (argued), Warman and Crone, Pittsburgh, Pa., for appellee.

Before HUNTER and GARTH, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from an order of the United States District Court for the Western District of Pennsylvania, which denied a motion by appellant Travelers Indemnity Company ("Travelers") for a stay of an action brought by appellee Cost Brothers, Inc. ("Cost") upon a payment bond issued by Travelers as surety for Frank Briscoe Company ("Briscoe"). Travelers sought the stay pending arbitration of the dispute between Cost and Briscoe. Because the district court premised its denial of the stay upon an erroneous holding that federal law governed the question of Travelers' entitlement to the arbitration defense, we will vacate the judgment of the district court and remand for proceedings consistent with this opinion.

### I

In May 1977, Briscoe entered into a contract with the Pennsylvania Department of Public Works for construction of the Pittsburgh Convention-Exposition Center. Pursuant to the Pennsylvania Public Works Contractors' Bond Law ("PWCBL"), 8 Pa. Stat.Ann. § 193–202 (Purdon Supp.1984),

Briscoe obtained performance and payment bonds on the construction contract from Travelers.

In October 1977, Briscoe engaged Cost as masonry subcontractor on the Convention-Exposition Center project. The contract between Cost and Briscoe provides for arbitration of "[a]ny controversy or claim arising out of or relating to this subcontract or the breach thereof...." Nevertheless, when Cost sought to recover allegedly overdue payments from Briscoe, it bypassed the arbitration agreement and chose instead to avail itself of the direct action against the surety, Travelers, provided by PWCBL. *See* 8 Pa.Stat.Ann. § 194. Cost brought an action in assumpsit in the Pennsylvania Court of Common Pleas, but Travelers obtained removal to the United States District Court for the Western District of Pennsylvania on the basis of diversity of citizenship.

Travelers moved the district court for a stay of the action pending arbitration of the dispute between Cost and Briscoe. The district court noted that in this diversity case, state law would govern the ultimate disposition of the merits. However, the district court also held that the Cost-Briscoe contract—an agreement between a Pennsylvania subcontractor and a New Jersey general contractor on a Pennsylvania project—involved interstate commerce within the meaning of the Federal Arbitration Act, 9 U.S.C. § 2 (1982). Based on this holding, the district court concluded that the question of Travelers' entitlement to rely on that agreement in seeking a stay was governed by federal substantive law. The district court went on to hold as a matter of federal law that Travelers, which was not a party to the arbitration agreement, could not rely upon it. The district court therefore entered an order denying Travelers' motion for a stay. Travelers now appeals from this order.[1]

---

\* Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. Despite the interlocutory character of the district court's order, this court has jurisdiction of this appeal under the *Enelow-Ettelson* rule. *See Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935). Under this rule, an

## II

■ The Federal Arbitration Act provides that arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (1982). The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable. *See* H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924); *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 985 (2d Cir.1942). Thus, the Federal Arbitration Act preempts state law that might "undercut the enforceability of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984). Accordingly, in contracts controlled by the Act, questions of the construction of arbitration agreements and their enforceability are governed by federal substantive law. *See, e.g., Southland, supra,* (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–405, 87 S.Ct. 1801, 1806–1807, 18 L.Ed.2d 1270 (1967); *Becker Autoradio v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir.1978).

■ We agree with the district court that the construction of the Cost-Briscoe arbitration agreement would be a question of federal law under the Federal Arbitration Act. We also agree that Travelers, which is not a party to the agreement, may not compel Cost to submit its dispute with Travelers to arbitration. The question before the district court, however, was whether Travelers, as surety, could rely upon Cost's failure to exhaust its arbitral remedy against Briscoe as a ground for requesting a stay, notwithstanding PWCBL's provision of a direct action by subcontractors against sureties. This is a question of surety law that does not depend upon a construction of the arbitration agreement itself, and the resolution of this question as a matter of state surety law does not threaten to "undercut the enforceability of arbitration agreements." *Southland*, 104 S.Ct. at 861. The Federal Arbitration Act, therefore, does not displace state surety law in this diversity case. *See Erie v. Tompkins*, 304 U.S. at 64, 78, 58 S.Ct. at 817, 822, 82 L.Ed. at 1188 (1938) ("Except in matters governed by the Federal Constitution or by Acts of commerce, the law to be applied in any case is the law of the State.... There is no federal general common law."). The district court therefore erred in holding that Travelers' entitlement to rely upon the arbitration agreement was governed by federal law, and we must vacate the judgment below.

## III

The district court did not pass on the state-law question presented to it, because of its erroneous conclusion that federal law precluded Travelers from relying upon the Cost-Briscoe arbitration agreement. Moreover, the decision whether to grant a stay in this case is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket. *See, e.g., Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382, 387

order by which a court grants or denies a stay of its own proceedings in an action at law pending the resolution of an equitable defense or counterclaim is analogized to an order enjoining or refusing to enjoin proceedings in another court, hearkening back to the days before the merger of law and equity. Since an order granting or denying an injunction is appealable under 28 U.S.C. § 1292(a)(1) (1982), so too is an *Enelow-Ettelson* order. *See, e.g., Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 182–83, 75 S.Ct. 249, 253–54, 99 L.Ed. 233 (1955); *Coastal Steel Corp. v. Tilghman Wheelabrator, Inc.*, 709 F.2d 190, 194 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).

Cost's lawsuit in assumpsit is clearly an action at law. And, because an action to compel arbitration is one for specific performance on a contract, a request for a stay pending arbitration has long been regarded as an equitable claim for purposes of applying the *Enelow-Ettelson* rule. *See Shanferoke Corp. v. Westchester Corp.*, 293 U.S. 449, 452–53, 55 S.Ct. 313, 314–15, 79 L.Ed. 583 (1935); *Becker Autoradio v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 42 n. 7 (3d Cir.1978). Travelers' appeal therefore falls squarely into the *Enelow-Ettelson* rule, and into this court's jurisdiction under 28 U.S.C. § 1291(a)(1).

(8th Cir.1983); *American Home Assurance Co. v. Vecco Concrete Constr. Co.,* 629 F.2d 961, 964 (4th Cir.1980); *Gavlik Constr. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 784 (3d Cir.1975). We will therefore remand this case for proceedings consistent with this opinion.

GARTH, Circuit Judge, dissenting:

In this case, Cost as a subcontractor of Briscoe (the general contractor), brought an action directly against Travelers, the surety for Briscoe.[1] Briscoe is not a party to the instant action as Cost did not sue Briscoe. Indeed, Briscoe's contract with Cost would preclude court actions, as the contract provides for arbitration of disputes that may arise.

Travelers is not a party to the Briscoe-Cost contract. Travelers has neither adopted the Briscoe-Cost contract, nor incorporated any provisions of the contract in its surety agreement with Briscoe. Thus, Travelers is a complete stranger to the Briscoe-Cost arbitration provision.

Nevertheless, in response to Cost's district court action, Travelers moved to stay proceedings against it pending Cost's arbitration with Briscoe of Cost's claim. In essence, Travelers claimed that any direct suit upon its payment bond was precluded until the arbitration process with Briscoe had been completed.

The district court denied Travelers' motion, and the majority of this court has reversed that decision. The majority holds that because state, rather than federal, law controls, the case must be returned to the district court. I, on the other hand, recognizing that the issue involved concerns only a question of law which we are both competent and required to decide, would affirm the decision of the district court, although for reasons somewhat different from the grounds on which the district court relied.[2]

I would therefore hold that in the absence of some express or implied contract either contemplating arbitration between Travelers and Cost, or requiring arbitration between Briscoe and Cost as a condition precedent to a suit against Travelers, the district court's denial of a stay pending arbitration should be affirmed. Concomitantly, I would hold that Cost, by agreeing to arbitrate disputes with Briscoe, should not be deemed to have impliedly waived its direct right of action against Travelers under the PWCBL.

I.

I agree with the majority that the district court erred in concluding that federal law controls the present controversy. Although the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1982), would govern the construction of the Briscoe-Cost agreement, the act is irrelevant to the instant dispute precisely because Travelers is not a signatory to that agreement. Nor does the bond issued by Travelers incorporate by reference the terms of the Briscoe-Cost agreement.[3] We are therefore remitted to

---

1. Briscoe and the Pennsylvania Department of General Services entered into a contract for the construction of the Pittsburgh Convention-Exposition Center. Pennsylvania law requires that prime contractors for public work furnish both performance and payment bonds where the contract exceeds $5,000 as it did here. *See* Public Works Contractors' Bond Law ("PWCBL"), 8 Pa.Stat.Ann. § 193 (Purdon Supp. 1984). Briscoe thereupon obtained its bonds from Travelers. As discussed in text *infra,* under the terms of the statutory payment bond, subcontractors who supply material or labor to a contractor in aid of a public works project may sue the surety on the bond to require payments due and owing beyond 90 days.

2. See *PAAC v. Rizzo,* 502 F.2d 306 (3d Cir.1974) (appellate court may affirm a correct decision of the district court even when the district court's decision is upon an inappropriate ground upon which the appellate court does not rely).

3. Travelers' reliance upon those cases, holding that a surety on a statutory bond may be bound to arbitrate where the bond incorporates by reference an underlying contract containing an arbitration clause, is thus misplaced. *See Exchange Mutual Insurance Co. v. Haskell Co.,* 742 F.2d 274 (6th Cir.1984); *J & S Construction Co. v. Travelers Indemnity Co.,* 520 F.2d 809 (1st Cir.1975) (Massachusetts law); *Fidelity and Deposit Co. v. Parsons & Whittemore,* 48 N.Y.2d 127, 421 N.Y.S.2d 869, 397 N.E.2d 380 (1979)

state law to settle this diversity case. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The decision that state law applies, however, does not serve to expand Travelers' right to demand a stay pending arbitration. Under Pennsylvania law, no less than under federal law, arbitration is a matter of contract. A person, who is not a party to an arbitration agreement, can neither invoke its protections nor be required to submit to its strictures. *See, e.g., Lincoln University v. Lincoln Association of University Professors*, 467 Pa. 112, 354 A.2d 576 (1976); *Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Board of Philadelphia*, 426 Pa. 53, 231 A.2d 160 (1967). To assert a right to have Cost arbitrate its claims, Travelers would have to make some showing of express or implied contractual entitlement, a showing which, in my opinion, is not met simply by virtue of Travelers' status as a surety.[4]

Travelers nonetheless argues that its dispute with Cost Brothers "arises from" or "relates to" the Briscoe-Cost agreement and thus Briscoe and Cost must necessarily arbitrate before an action against Travelers may be maintained. Travelers, however, ignores the requirement that some contractual relationship between Cost and itself must underlie its claim to arbitration. The instant dispute, though it may relate to the Briscoe-Cost agreement, is no more than a foreseeable consequence of one of Travelers' potential liabilities as Briscoe's surety. This fact alone cannot and should not enable Travelers to pre-empt Cost's forum choice, in the absence of some clear contractual right of Travelers. Indeed, to allow Travelers to demand arbitration because Briscoe is contractually entitled to do so, is ultimately to permit a surety to insist that its principal's liability be fixed before resort may be had to the surety—a principle firmly rejected by Pennsylvania law.[5] *See* 8 Pa.Stat.Ann. § 194.

## II.

The Pennsylvania Public Works Contractors' Bond Law evinces a clear legislative intent to provide subcontractors, like Cost Brothers, with a direct action against a surety on a statutory payment bond. In Pennsylvania, such an action may be maintained without joining the principal—here Briscoe.

Section 194 of the PWCBL specifically states that *"any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given,* ... and who has not been paid in full therefor before the expiration of ninety days after the day on which such claimant performed the last of such

(New York law). That a surety, to demand arbitration, need not be a signatory to a contract incorporated by reference in the surety bond, cannot support the extension of arbitration rights to a surety who is an utter stranger to the arbitration agreement, particularly where the surety bond does not incorporate the underlying contract by reference or adoption.

4. Arbitration differs from those defenses against liability which a surety may assert in its principal's stead, precisely because arbitration itself cannot be deemed a "defense" when asserted by a non-party to the arbitration agreement. It is no more than a *process* by which a dispute is resolved and liability is fixed. It is not therefore obviously equivalent to those traditional defenses, such as fraud, duress, or failure of consideration, which themselves discharge the surety from liability. *Cf. Murray Oil Products Co. v. Mitsui & Co.* 146 F.2d 381, 384 (2d Cir. 1944) (valid arbitration clause modifies proce-

dure only by substituting arbitration as mode of trial) (dictum).

5. I am not persuaded by Travelers' argument that unless we require Cost to arbitrate with Briscoe first, we will have rendered meaningless the Briscoe-Cost arbitration provision, i.e., if Cost is permitted to sue Travelers, and Travelers brings in Briscoe as a third party defendant, no arbitration under the Briscoe-Cost contract would ever take place.

The simple answer to this argument is that at all times, Travelers had it within its power to require Briscoe to provide for either arbitration with Travelers in any contract into which Briscoe entered with a subcontractor, or to require a waiver of the subcontractor's rights under 8 Pa.Stat.Ann. § 194 (Purdon Supp.1984). Travelers could have done so as a condition of furnishing surety to Briscoe. Travelers failed to do so, and therefore cannot now be heard to complain.

labor or furnished the last of such materials for which he claims payments, *may bring an action on such payment bond* in his own name, in assumpsit, *to recover any amount due him for such labor or material,* and may prosecute such action to final judgment and have execution on the judgment." 8 Pa.Stat.Ann. § 194 (Purdon Supp.1984) (emphasis added).

On the facts of this case, a holding that the Briscoe-Cost agreement enables Travelers to obtain a stay pending arbitration necessitates: (1) an implicit conclusion that Cost, despite the express authorization of section 194, cannot bring a direct action against Travelers; and (2) an implicit finding that Cost, by entering the arbitration agreement with Briscoe, "waived" its rights under section 194. Only through such a waiver could Briscoe's arbitration rights be deemed to inure to Travelers in derogation of the explicit provision of the PWCBL. Indeed, at no time, has Travelers ever argued that Cost "waived" its statutory rights. Moreover, no Pennsylvania court has ever held that, even if a waiver was intended, such a waiver could be effected by implication.[6]

Thus, the Pennsylvania legislative scheme appears to contemplate affording a subcontractor, in the position of Cost, a choice of remedies: if the subcontractor's contract with the general contractor provides for arbitration, then either arbitration may be pursued with the general, or a direct suit may be brought against either the surety and the general or directly against the surety alone upon the bond. Indeed, such a choice seems thoroughly consistent with the stated purpose of the PWCBL: to secure the interests of subcontractors who are unable to obtain mechanics liens against public works projects.

To conclude that the mere signing of an arbitration agreement with Briscoe can suffice to waive Cost's statutory rights against Travelers, a third-party non-signatory, is, in effect, to render meaningless the provisions of section 194. It would require that section 194 be construed to permit: (1) a subcontractor to sue a surety directly, only if the general contractor is joined in the suit; or (2) a subcontractor to sue or arbitrate with the general to determine damages prior to bringing any action against the surety. Because I can find no support for these interpretations in the plain and explicit language of section 194, I disagree with the implication that Travelers may obtain a stay pending arbitration.[7]

---

**6.** Our independent research has discovered only one Pennsylvania case that is at all relevant. In *Arledge v. Builders, Inc.,* 125 P.L.J. 30 (Com.Pl. 1977), a subcontractor brought suit against a general contractor and its surety to recover on a payment bond for work performed. The contract between the sub and the general contained an arbitration agreement. The court held that the subcontractor was bound by the arbitration clause to pursue its claim against the surety under arbitration procedures and might not proceed with its court action. 125 P.L.J. at 31. Accordingly, the action was stayed. Although *Arledge* seems factually close to the present case, the court at no time even mentioned, let alone discussed, the existence or effect of the PWCBL on the surety's ability to obtain a stay. The statute, however, as we have observed requires a result directly contrary to the *Arledge* outcome. The failure of *Arledge* to address any direct statutory right of action or to acknowledge the statute, renders its analysis and holding incomplete and negates its precedential value for purposes of the instant appeal.

**7.** In the absence of some contractual agreement between Travelers and Cost Brothers to submit disputes to arbitration, it need not be decided whether the public policy favoring arbitration takes precedence over that favoring a materialman's direct right of action. Travelers has never agreed to arbitrate or be bound by arbitration. Thus, the policy of encouraging resolution of disputes by means of binding arbitration (*see, e.g.* United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)) clearly has no relevance in this case.

Moreover, those cases, construing the Miller Act, 40 U.S.C. §§ 270a, 270b, to yield to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* are also distinguishable from the present case, both because the parties to the arbitration agreements in those cases were before the court and because with respect to the general contractor, the subcontractor in each case had voluntarily agreed to arbitration. *See, e.g.* Electronic & Missile Facilities, Inc. v. Moseley, 306 F.2d 554 (5th Cir.1962).

The sole Miller Act case in which a stay pending arbitration was granted in an action brought against the surety alone, *see United States for Use of DeLay and Daniels, Inc. v. American*

## III.

For the foregoing reasons, I would affirm the decision of the district court. The status of Travelers as a surety cannot foreclose Cost's direct right of action under the PWCBL in the absence of some express or implied agreement to extend the arbitration rights of Briscoe to a third-party. Travelers is a sophisticated commercial actor and a compensated surety. Had it wished to gain standing to arbitrate, or to compel arbitration as a condition precedent to any action taken against it by a subcontractor, it could have done so. It could have readily included or incorporated by reference in its bond an arbitration provision or a provision that any subcontractor, who agreed to arbitrate with Briscoe, thereby waived its statutory right of action against Travelers. Having failed to do so, Travelers cannot now seek to assert a right which Briscoe alone may claim.

I dissent.

*Employers Insurance Co.,* 290 F.Supp. 139 (D.S. C.1968), is a district court case which fails to articulate any analysis or reason for granting such a stay, and is thus suspect in its holding, particularly since it cannot be ascertained whether in that case issues similar to those presented here were raised or addressed.