North Star School District *v.* P.L.R.B. et al. North Star Education Association, Appellant.

North Star School District *v.* P.L.R.B. et al. Pennsylvania Labor Relations Board, Appellant.

430

Argued March 1, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*William K. Eckel*, for North Star Education Association.

*Samuel D. Clapper*, with him *Nathaniel A. Barbera*, and *Barbera & Barbera*, for North Star School District.

*James Allmendinger*, Assistant Attorney General, with him *James L. Crawford*, Assistant Attorney Gen-

eral, *William G. Dade,* Assistant Attorney General, and *Donald A. Wallace,* Assistant Attorney General, for Pennsylvania Labor Relations Board.

OPINION BY JUDGE BLATT, May 23, 1978:

The North Star Education Association (Association) and the Pennsylvania Labor Relations Board (Board) appeal here from an order of the Court of Common Pleas of Somerset County which reversed in part a final order of the Board. The North Star School District (District) had been found by the Board to have committed an unfair labor practice in refusing to submit a grievance to arbitration. The appeals of the Board and of the Association are herein consolidated.

Sometime before the beginning of the 1975-76 school year, which was to begin on August 25, 1975, the District adopted a school calendar calling for 180 teaching days. The teachers went on strike on the following day, August 26, and remained on strike until September 10, when classes resumed. Ten teaching days were lost, therefore, as a result of the strike. Negotiations on a new collective bargaining agreement between the District and the Association continued for five months, and, when the parties finally executed an agreement for the 1975-77 school years in February 1976, it was back-dated to November 26, 1975 and it was made effective as of July 1, 1975.

The Association filed the grievance which is the subject of these appeals in June 1976, stating that the District's recently announced decision to schedule less than 180 teaching days for the 1975-76 school year was in violation of the collective bargaining agreement which called for 180 days of instruction annually. The grievance proceeded through the prescribed four-step procedure with the District denying the grievance at each step, and the Association finally re-

questing the District to submit the matter to binding arbitration as provided in step five of the procedure. The District refused.

In response to the District's refusal to arbitrate, the Association filed unfair labor practice charges with the Board, alleging that the District's refusal to arbitrate was a violation of Sections 1201(a)(1) and (5) of the Public Employe Relations Act[1] (PERA), 43 P.S. §§1101.1201(a)(1), (5). The Board held a hearing and later issued a final order finding that the District had committed an unfair labor practice and ordering the District to submit the grievance to arbitration. The District appealed to the court of common pleas, which reversed, holding that this grievance[2] was not arbitrable. This appeal followed.

In an appeal from a Board determination concerning the commission of an unfair labor practice, review by this Court is limited to a determination of whether or not the findings of the Board are supported by substantial and legally credible evidence and whether or not the conclusions deduced therefrom are reasonable and not capricious, arbitrary or illegal. *In Re: Appeal of Cumberland Valley School District*, 31 Pa. Commonwealth Ct. 407, 410, 376 A.2d 674, 676 (1977).

The arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is made compulsory by Section 903 of PERA, 43 P.S. §1101.903, and, in light of PERA's unequivocal language that arbitration of such disputes or grievances is mandatory, this Court has previously held that the failure to submit a grievance to binding arbitration is an unfair labor practice violative of Section 1201(a)(5) of PERA, 43 P.S.

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.101 et seq.

[2] The court also upheld the arbitrability of another grievance in the same order which has not been appealed.

§1101.1201(a)(5). *See Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board*, 30 Pa. Commonwealth Ct. 403, 409, 373 A.2d 1175, 1179 (1977). The Board and the Association argue here, however, that the lower court applied the wrong standard in determining whether or not the grievance was arbitrable.

Our Supreme Court has held that whenever one party to an agreement seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to two questions: (1) was an agreement to arbitrate entered into; and (2) does the dispute involved fall within the arbitration clause. *Lincoln University v. Lincoln University Chapter, American Association of University Professors*, 467 Pa. 112, 119, 354 A.2d 576, 580 (1976). In the present case, the arbitration provision of the parties' agreement incorporates Section 903 of PERA, 43 P.S. §1101.903, and this requires arbitration of grievances arising out of the interpretation of the agreement's provisions.[3] The issue we must decide, therefore, is whether or not the grievance between the parties arguably involves an interpreta-

---

[3] The grievance procedure specified in the parties' agreement culminates in binding arbitration after the completion of four preliminary steps. The last step of the grievance procedure is described in the agreement as follows:

Step 5. If the Action in Step 4 fails to resolve the grievance to the satisfaction of the affected parties, and the grievance is required by Section 903 of Act 195 to go to binding arbitration for resolution of such a grievance, the grievance shall be referred to binding arbitration as provided in Section 903 of Act 195. Both parties shall be bound to the decision obtained through arbitration except where enabling legislation is required, in which case such decision shall be binding only as such legislation is enacted as provided in Section 901 of Act 195. If the grievance fails to meet the criteria of Section 903 of Act 195, the decision of the Board of Directors in Step 4 referred to above shall be final.

tion of one of the provisions of the agreement. *See Oxford Board of School Directors v. Pennsylvania Labor Relations Board*, 31 Pa. Commonwealth Ct. 441, 376 A.2d 1012 (1977).

The Association's grievance essentially maintains that the District's decision to schedule less than 180 days of instruction for the 1975-76 school year was in violation of the collective bargaining agreement. Article II of this agreement provides in relevant part that "[t]he normal school year shall consist of 180 days, with students and two additional in-service days." The Association and Board contend that the present grievance arguably involves an interpretation of this provision and that arbitration is therefore compelled by both the agreement and by Section 903 of PERA, 43 P.S. §1101.903. The District argues that the grievance is not arbitrable because: (1) it does not arise out of the interpretation of any provision of the agreement and (2) any remedy that could be fashioned by the arbitrator would be illegal.

We believe that the grievance at issue here is one which arguably does involve an interpretation of Article II of the agreement and that arbitration is therefore appropriate. The relevant provision of Article II does not contain any specific exception to the general rule that the school year shall consist of 180 teaching days[4] and, because it cannot be said with positive assurance that the arbitration clause here involved is not susceptible to an interpretation which

---

[4] Article II of the parties' agreement provides as follows:

> The normal school work year shall consist of 180 days with students and two additional days as in-service days. Vocational-Agricultural teachers' school work year shall consist and extend over a period of twelve months.

The question of whether, in view of the teachers' strike, the 1975-76 year was a normal school work year requiring 180 days of instruction is one we leave to the expertise of the arbitrator.

covers the asserted dispute, we must reject the District's argument that the matters raised in the grievance do not fall within the clause concerned.

The District also argues that arbitration should be enjoined because any remedy fashioned by the arbitrator which would pay the teachers for unscheduled teaching days would be illegal.[5] The lower court adopted this reasoning in enjoining arbitration, but we believe that it was in error in so doing. As we have previously held, arbitration is not an improper remedy simply because an arbitrator might possibly fashion an invalid award. *See In Re: Appeal of Jones,* 30 Pa. Commonwealth Ct. 549, 552, 375 A.2d 1341, 1342 (1977); *Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board, supra,* 30 Pa. Commonwealth Ct. at 409-410, 373 A.2d at 1179. And, as noted in *Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board, supra,* 30 Pa. Commonwealth Ct. at 409 n.6, 373 A.2d at 1179 n.6, such an argument is directed toward the enforceability of an arbitrator's award and is prematurely raised in the context of the initial determination of the arbitrability of a grievance.[6] Ju-

---

[5] The District contends that payment of the teachers' for the unscheduled teaching days of the 1975-76 school year would violate Section 1006 of PERA, 43 P.S. §1101.1006, which prohibits payment of any public employee for periods during which the employee was on strike. The District also contends that payment of compensation would violate the compensation provisions of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §1-101 et seq. We express no opinion as to the validity of these contentions, believing that they should be reserved for the arbitrator and the court which ultimately reviews the arbitrator's decision.

[6] Section 11(d) of the Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. §171(d), permits a court to modify or correct an arbitrator's award which is "against the law." *See Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* Pa. , , 375 A.2d 1267, 1275 (1977).

dicial inquiry into the arbitrability of a grievance is limited to a determination of (1) whether or not the parties entered into an agreement to arbitrate and (2) whether or not the dispute falls within the arbitration clause. We believe that, in the present case, the answer to both questions must be affirmative and that arbitration, therefore, is a proper remedy.

The order of the lower court is reversed.

### ORDER

AND Now, this 23rd day of May, 1978, the order of the Court of Common Pleas of Somerset County, dated August 1, 1977 and numbered 375 Civil 1976, is reversed insofar as it sets aside the order of the Pennsylvania Labor Relations Board directing arbitration of the grievance relating to the scheduling of 180 days of instruction for the 1975-76 school year.

---

CONCURRING OPINION BY JUDGE MENCER:

I concur in the result reached by the majority here because this Court has previously held that the failure to submit a grievance to binding arbitration is an unfair labor practice, violative of Section 1201(a)(5) of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1201(a)(5). *Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board*, 30 Pa. Commonwealth Ct. 403, 373 A.2d 1175 (1977). Nevertheless, I yet hold to the views expressed in my dissent in that case that a court, not the Pennsylvania Labor Relations Board, is the appropriate forum for determining the arbitrability of an issue arising out of conflicting interpretations of the provisions of a collective bargaining agreement.