Pennsylvania Labor Relations Board, Appellant
*v.* Bald Eagle Area School District, Appellee.

Argued February 7, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, BLATT, DISALLE, CRAIG and MACPHAIL. Judges WILKINSON, JR. and ROGERS did not participate.

*Donald A. Wallace,* with him *James L. Crawford,* for appellant.

*John R. Miller, Jr.,* with him *Miller, Kistler & Campbell,* for appellee, Bald Eagle Area School District.

*William A. Hebe,* with him *Spencer, Gleason & Hebe,* for appellee, Bald Eagle Area Education Association.

OPINION BY PRESIDENT JUDGE BOWMAN, July 13, 1979:

The Pennsylvania Labor Relations Board (Board) appeals an order of the Court of Common Pleas of Centre County which reversed a Board order determining that the Bald Eagle Area School District (Employer) committed an unfair labor practice when it refused to submit to arbitration a grievance filed by the Bald Eagle Area Education Association (Union). We affirm the order of the lower court.

Proceedings before the Board were initiated by a charge filed by the Union, which averred that the Employer's refusal to process a grievance "valid on its face" violated Sections 803 and 1201(a)(1) and (5) of the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.803, .1201(a)(1), (5). The grievance underlying the asserted unfair labor charge recited several provisions of the agreement between the Employer and the Union which had allegedly been violated and the relief sought, *i.e.,* "[a]ll members of the bargaining unit shall be paid all money due and owing plus the interest as provided by Pennsylvania School Code."

The money plus interest sought equals the difference between compensation for the 180 days of pupil instruction established by the school calendar and for the 179 days of service for which grieving Union members were paid. The one day variance reflects a one day strike by most Union members, which occurred in

mid-September, after the school year had begun. Those Union members who did report for work on the day in issue were paid for their services. After the strike, the Employer and Union negotiated and signed the collective bargaining agreement which governed the employment relationship for the school year, including those days of September which *preceded* the work stoppage. Of particular significance here is Article VI of the collective bargaining agreement which states:

## TEACHER WORK YEAR

### A. *School Work Year*

The school work year for employees shall not exceed 183 days, of which 180 shall be pupil contact days. Teachers who are required to work on their regular contracts more than 183 days, shall be compensated for these extra days on the basis of their regular salary prorated.

Subsequent to signing the agreement, the Employer did not amend the school calendar to add an additional pupil contact day so as to provide striking teachers with an additional work day. Underlying the conclusion that no schedule modification was necessary were the payment of salary to those teachers who worked on September 12, 1975, and the Department of Education's conclusion that the Employer's efforts on that date were sufficient to warrant inclusion of that day in the computation of the minimum number of school days necessary for state reimbursement.

The grievance giving rise to the unfair labor practice charge was filed June 18, 1976, after schools had recessed for the summer, but before the end of the school calendar year. The Employer consistently denied the grievance at all levels of the grievance procedure and ultimately refused to take the matter to arbitration. Its position is that no dispute subject to arbi-

tration is involved inasmuch as 180 instructional days were scheduled and held as required by the contract and evidenced by the Department's action and that the goal sought to be attained through arbitration is illegal or impossible of performance.

The Board disposed of the unfair labor practice charge by finding:

> We believe that [the Employer's] argument must be rejected as one that is properly made to an arbitrator. Our function is limited to determining whether we can say with positive assurance that the arbitration clause in the agreement is not susceptible to an interpretation that covers the asserted dispute. See Lincoln University of the Commonwealth System of Higher Education v. The Lincoln University Chapter of the American Association of University Professors, [467] Pa. [112], 354 A.2d 576 (1976).

> Having determined that we cannot so state, we must conclude that the Employer committed an unfair practice by not submitting the matter to arbitration. . . . Our function ends when we find a dispute which is arguably governed by the agreement.

The Board's reference to the *Lincoln University* decision is appropriate. Speaking for the Supreme Court, Justice, now Chief Justice, EAGEN there applied a two-tiered framework of analysis to the facts presented, a public employer-employee labor dispute in which the university sought to enjoin the arbitration proceeding desired by the employee bargaining agent. This guideline for inquiry initially requires a determination that the parties did indeed enter into an agreement to arbitrate; second, the Court must find that the dispute is within the scope of the arbitration clause.

The existence of an agreement to arbitrate is undisputed. Section 903 of Act 195, 43 P.S. §1101.903, provides that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." In compliance with this mandate, the Employer and Union in Article III of the collective bargaining agreement established a grievance procedure culminating in binding arbitration "as provided in Section 903 of Act 195."

The remaining issue is thus whether or not the dispute is within the scope of the arbitration agreement, *i.e.,* does the grievance of the Union seeking pay for an additional day arise out of the interpretation of the provisions of the contract. Recognizing the favored position of arbitration as the method for resolving disputes in the workplace, this query has been rephrased as "whether there is involved a dispute between the parties which *arguably* involves an interpretation or violation of one of the provisions of the collective bargaining agreement." *Oxford Board of School Directors v. Pennsylvania Labor Relations Board,* 31 Pa. Commonwealth Ct. 441, 445, 376 A.2d 1012, 1013 (1977) (emphasis in original).

The Board found such a dispute did exist. In an appeal from an order directing remedial action with respect to an unfair labor charge, review by this Court is limited to a determination of whether or not the Board's findings are supported by substantial and legally credible evidence and whether or not conclusions based thereon are reasonable and not capricious, arbitrary or illegal. *APSCUF v. Pennsylvania Labor Relations Board,* 30 Pa. Commonwealth Ct. 403, 408, 373 A.2d 1175, 1178 (1977). We find that as a matter of law no dispute arguably subject to arbitration is presented by these facts. The Employer scheduled 180 days of instruction, transported students to the

appropriate sites on 180 days and paid some teachers for 180 days of service, exactly as provided for in the agreement. The Department of Education approved the calendar as presented and fulfilled. No factual dispute exists to be resolved by an arbitrator. Those teachers who did not work 180 days because they were on strike on one of those instructional days cannot logically argue that they are entitled to compensation equal to that of those who did provide the full complement of services.[1] The analysis of the arbitration award sustained by a majority of this Court in *Carmichaels Area School District v. Carmichaels Area Education Association*, 37 Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978), cannot be utilized nor is it controlling under the facts present in this case. Unlike the *Carmichaels* fact posture, the Union did not here assert that the contract provided for annual salaries, nor in *Carmichaels* was the school open, pupils present and given instruction by nonstriking teachers during the strike day(s) as is the case here. One hundred eighty (180) pupil contact days were provided by the Employer, precisely as called for in the contract.

As it can be said with positive assurance that the dispute in question is not one which arguably involves an interpretation or violation of the collective bargaining agreement within the framework of the arbitration clause, we affirm the order of the lower court.

ORDER

Now, July 13, 1979, the order of the lower court reversing the order of the Pennsylvania Labor Relations Board is affirmed.

---

[1] Although the possible relief that an arbitrator could award if he would find in favor of the Union is not presently before us in this appeal, it is difficult to perceive any award he could make which would not be violative of positive law as contrary to Section 1006 of Act 195, 43 P.S. §1101.1006, denying to public employees entitlement to pay for the period engaged in any strike.

DISSENTING OPINION BY JUDGE CRAIG:

I respectfully dissent because the majority decision here has reached and resolved the merits of the grievance, instead of confining the role of this court to its proper limit, that of considering whether or not the grievance is an arbitrable one.

This case is controlled by our court's decision in *North Star School District v. Pennsylvania Labor Relations Board,* 35 Pa. Commonwealth Ct. 429, 386 A.2d 1059 (1978).

*North Star* involved an agreement calling for "180 days with students" plus 2 inservice days; 10 teaching days had been lost as a result of a strike. Here the agreement called for a school year of "183 days, of which 180 shall be pupil contact days."; on the one day of strike here, seven of the teachers did report to work and students were bussed to school but then sent home without attendance being taken and without any teaching being done.

Even coupled with the fact that the strike day here was considered a reimbursable day for state subsidy by the Pennsylvania Department of Education, the distinction between the two cases is a thin one, sufficiently so that it is arguable whether there is a meaningful distinction at all. Quite directly, at least one clear question for an arbitrator is whether or not the strike day here was genuinely a "pupil contact" day, which in turn hinges upon whether that designation in the agreement should be interpreted to refer to an actual day of teaching.

Neither the Department of Education ruling, nor the school district's unilateral decision to pay the seven teachers who reported, can be treated as foreclosing the answer to that question because such collateral actions cannot change the meaning of the agreement of the parties.

In the *North Star* case, as the majority opinion does here, this court properly acknowledged that the legality of possible relief to be awarded by an arbitrator is not before this court. As Judge BLATT's opinion stated:

> As we have previously held, arbitration is not an improper remedy simply because an arbitrator might possibly fashion an invalid award. . . . [Citations omitted.]

*North Star School District v. Pennsylvania Labor Relations Board*, 35 Pa. Commonwealth Ct. at 435, 386 A.2d at 1062.

I submit that we should not diminish the pre-eminent role which our court and others have given to the desirable process of arbitration. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960). As the United States Supreme Court there said, and is the case here, the agreement is to submit all grievances to arbitration, not merely those which a court deems to be meritorious.

Judges BLATT and DiSALLE join in this Dissent.