Commonwealth of Pennsylvania, Petitioner *v.* Joint Bargaining Committee of Pennsylvania Social Services Union et al., Respondents.

Joint Bargaining Committee of Pennsylvania Social Services Union etc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued January 30, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*Frank P. Clark,* Assistant Counsel, with him, *John D . Raup,* Chief Counsel, for petitioner/respondent, Commonwealth of Pennsylvania.

*Bruce M. Ludwig, Stephen A. Sheller & Associates,* for respondent/petitioner, Joint Bargaining Committee of Pennsylvania Social Services Union et al.

*Barbara G. Raup,* Chief Counsel, for amicus curiae, State Civil Service Commission.

OPINION BY JUDGE ROGERS, May 2, 1984:

These are the cross appeals of the Commonwealth on the one hand and of two local affiliates of the Service Employees International Union,[1] acting as collective representative of Kathryn J. DeHaven, on the other, from the award of an arbitrator in grievance proceedings. The award decided issues raised in the wake of the dismissal of Ms. DeHaven from her civil service position of Unemployment Claims Examiner I in the Berwick Office of the Employment Security Division of the Commonwealth Department of Labor and Industry.

---

[1] The Joint Bargaining Committee of Pennsylvania Social Services Union; Local 668 and the Pennsylvania Employment Security Employees' Association; Local 675.

The factual background is substantially undisputed. Ms. DeHaven was initially hired in January, 1974 as an Unemployment Claims Interviewer in the Berwick Office. In 1978 she was promoted to the position of Claims Examiner I, which position she held until the events of this case. During the weekend prior to the statewide election on November 3, 1981, Ms. DeHaven's mother was requested by an unidentified person to serve as a poll watcher. Her mother was unable to serve and Ms. DeHaven volunteered for the position. On November 2, 1981, Ms. DeHaven reported to work at the Berwick Employment Security Office and discussed briefly with a number of her co-workers her intention to serve as a poll watcher the following day.[2] No one to whom she spoke expressed concern about her plans. A poster located in a rest area and descriptive of political activity proscribed by federal law contained, in Ms. DeHaven's opinion, no admonition applicable to her service as a poll watcher.

On election day, Ms. DeHaven performed duties as a poll watcher for about four hours at a polling place convenient to her residence. Her principal duty was that of verifying names of electors on a list of names of eligible voters provided to her.[3] On return to her civil service employment the following day, Ms. DeHaven again spoke to co-workers about her volunteer service as poll watcher. On this occasion she was informed by one of these conversants that such activities might be forbidden to those like Ms. DeHaven em-

---

[2] Her counsel argues that she also discussed this intention with her superior. However, the testimony of Ms. DeHaven before the arbitrator was that she told her superior she planned to be "at the polls" on election day and this statement was, apparently, interpreted to indicate no more than Ms. DeHaven's purpose to cast her vote.

[3] Ms. DeHaven further testified that she was engaged during a large portion of this time in a personal sewing project.

ployed in the classified service. Immediately thereafter, Ms. DeHaven made inquiries of her supervisor and, in due course, a description of Ms. DeHaven's conduct was forwarded by the appointing authority's personnel officer to the Executive Director of the Civil Service Commission.

A hearing in the matter was conducted by the Commission on May 11, 1982 at which Ms. DeHaven appeared represented by counsel and following which the Commission determined that Ms. DeHaven had violated Section 904 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.904 which prohibits persons in the classified service from engaging in political activity and provides in pertinent part as follows:

> No person in the classified service shall . . . in any manner participate in or interfere with the conduct of any election or the preparation therefor at the polling place or with the election offices while counting the votes or returning the election material to the place provided by law for that purpose, save only for the purpose of making and depositing his own ballot as speedily as it reasonably can be done, nor shall he be within the polling place or within fifty feet thereof, except for the purpose of carrying out official duties and of ordinary travel or residence during the period of time beginning with one hour preceding the opening of the polls for holding such election and ending with the time when the election officers shall have finished counting the votes and have left the polling place for the purpose of depositing the election material in the place provided by law for that purpose. . . .

The Commission further determined that dismissal from the classified service was mandated by Section 906 of Act, 71 P.S. §741.906, in the case of persons found to have violated Section 904 and the Commission so ordered with respect to Ms. DeHaven. Section 906 of the Act is as follows:

> Any person holding a position in the classified service who violates any of the provisions of this act or of the rules made thereunder shall be immediately separated from the service. It shall be the duty of the appointing authority of the State Agency in which the offending person is employed to remove him at once in accordance with the provisions of this act. Any person removed under this section shall for a period of one year be ineligible for reappointment to any position in the classified service.

By letter dated October 21, 1982, Ms. DeHaven was notified by the Commonwealth Secretary of Labor and Industry that she was dismissed from her position with the Berwick Office of Employment Security and that she would "be ineligible for any appointment to the classified service for a one (1) year period beginning November 4, 1982."

Ms. DeHaven did not seek direct appellate review of the decision of the Civil Service Commission but she grieved her dismissal pursuant to Article 31 of the applicable Collective Bargaining Agreement which, *inter alia,* forbids an appointing authority from discharging an employee without just cause. Following an unfavorable resolution of the dispute by the Department of Labor and Industry's Labor Relations Coordinator, an arbitrator was selected and a hearing was conducted on April 20, 1983 during which the circumstances described above were explored in documentary submissions together with the testimony of

Ms. DeHaven, a number of her co-workers, and the Deputy Executive Director of the Pennsylvania Civil Service Commission.

At this hearing, the Commonwealth, apparently for the first time, contended that the matter of Ms. De-Haven's dismissal was not properly within the arbitrator's jurisdiction because the dismissal decision was predicated on the statutory mandate contained in Sections 904 and 906 of the Civil Service Act set forth above and because the dismissal decision had been directly occasioned by the Civil Service Commission's Order of October 13, 1982. The Union resisted the jurisdictional challenge and requested that the arbitrator reserve decision of this preliminary issue. To this end, the following question was jointly submitted:

Is the grievance arbitrable? If so, was the discharge of grievant for just cause? If not, what is the appropriate remedy?

These questions were answered in the arbitrator's award as follows:

## AWARD

1. The termination of the grievant is outside the jurisdiction of the arbitrator.

2. The reinstatement of the grievant is within the jurisdiction of the arbitrator.

3. The grievant shall be reappointed to her position with all seniority rights minus the period of termination as soon as practicable after she has served her one year termination.

We will consider these points seriatim. With respect to the jurisdictional issue, the arbitrator found, and the Commonwealth now contends, that the conduct of Ms. DeHaven here at issue having been expressly declared a violation of the Civil Service Act,

the question of just cause pursuant to the collective bargaining agreement is somehow preempted.[4] The only authority said to support this contention is *City of Lebanon v. District Council 89, AFSCME,* 36 Pa. Commonwealth Ct. 442, 388 A.2d 1116 (1978), where we held that a conviction of criminal mischief was conclusive evidence of the facts in a later civil proceeding, and that a labor arbitrator must accept the facts thus established.

In fact, the case undermines the Commonwealth's position. We did not hold in *City of Lebanon* that the arbitrator was without subject matter jurisdiction of the cause. Rather, we there recognized that the industrial justice meted out by the arbitrator cannot be wholly divorced from other sources of law including the deliberations of a criminal jury. To the same effect, *Pennsylvania Department of Justice, Bureau of Corrections v. Grant,* 22 Pa. Commonwealth Ct. 582, 350 A.2d 878 (1976), stands for the proposition that a criminal indictment may in a proper case constitute just cause. Thus, the considerations of the arbitrator are not to be confined to violations of the rules and practices of the workplace. The conceptual breadth of just cause and the range of considerations potential-

---

[4] We note that the principle generally applicable is that the arbitrator is possessed of jurisdiction if "there is involved a dispute between the parties which *arguably* involves an interpretation or violation of one of the provisions of the collective bargaining agreement." *Oxford Board of School Directors v. Pennsylvania Labor Relations Board,* 31 Pa. Commonwealth Ct. 441, 445, 376 A.2d 1012, 1013 (1977) (emphasis in original). This question is for the arbitrator in the first instance. *Port Authority of Allegheny County v. Amalgamated Transit Union,* 492 Pa. 494, 424 A.2d 1299 (1981). The contractual provision here involved is that requiring just cause for dismissal. Article 31, Section 1. The Commonwealth has apparently abandoned its contention pressed below that Ms. DeHaven's request for arbitration was barred by her appearance before the Civil Service Commission and the doctrine of election of remedies.

ly relevant to its determination are explicit in the familiar definition found in *O'Gorman Appeal*, 409 Pa. 571, 576, 187 A.2d 581, 583-584 (1963):

> To be sufficient . . . the cause should be personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service.
>
> . . . .
>
> All the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employee.

See also, *West Middlesex Area School District v. Pennsylvania Labor Relations Board*, 55 Pa. Commonwealth Ct. 404, 423 A.2d 781 (1980); *Strauss v. Civil Service Commission of Philadelphia*, 40 Pa. Commonwealth Ct. 560, 398 A.2d 1064 (1979); *Richter v. Civil Service Commission of Philadelphia*, 35 Pa. Commonwealth Ct. 310, 387 A.2d 131 (1978). This definition of just cause appears clearly to encompass conduct violative of pertinent statutes as a species of misconduct.

The arbitrator's decision to decline jurisdiction may have been impelled by the thought that the presence of an unambiguous statutory mandate and undisputed facts leave little to be resolved by arbitration. This concern is understandable. It does not, however, follow from the fact that the arbitrator's task is greatly simplified by an expression of the Legislature's will that the arbitrator has been divested of jurisdiction over the dispute. Indeed, the Pennsylvania Supreme Court recently decided this precise point in *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982). *Bald Eagle* concerned the arbitrability of the

issue of pay for certain striking teachers. A number of collective bargaining agreement provisions appeared to be applicable and the Pennsylvania Labor Relations Board ordered the school district employer to submit the dispute to arbitration. The common pleas court reversed the Pennsylvania Labor Relations Board's order. This Court affirmed the order of the common pleas court on the basis of the express prohibition of payment to public employees during the period of a strike contained in Section 1006 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1006. In effect, this court decided that there was no arbitrable issue because the only permissible result was determined by a straightforward application of positive law to the conceded facts.

The Supreme Court reversed, writing, in part, the following:

We have consistently held that "[t]he question of the *scope* of the grievance arbitration procedure is for the arbitrator at least in the first instance." (Citations omitted. Emphasis in the original.) As the dissenting opinion in the Commonwealth Court noted, the court itself in Northstar School District v. Pennsylvania Labor Relations Board, 35 Pa. Commonwealth Ct. 429, 435, 386 A.2d 1059, 1063 (1978) has held that: "arbitration is not an improper remedy simply because an arbitrator might possibly fashion an invalid reward," citing In Re: Appeal of Jones, 30 Pa. Commonwealth Ct. 549, 552, 375 A.2d 1341, 1342 (1977); Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board, 30 Pa. Commonwealth Ct. 403, 373 A.2d 1175 (1977). We remain convinced that on this is-

sue Northstar properly reflects the public policy articulated by the General Assembly in Section 903 of PERA, 43 P.S. §1101.903: "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." We so hold.

. . . .

Courts have no reason to assume an arbitrator will ignore the law and award a payment based on a contractual interpretation which conflicts with a fundamental policy of this Commonwealth expressed in statutory law. If so, judicial relief is available.

. . . .

We . . . hold that hereafter issues involving conflicts between a public sector collective bargaining agreement and fundamental statutory policies of this Commonwealth must be presented first to arbitration for determination, subject to appropriate court review of an award in conflict with such policies.

*Id.* 499 Pa. at 65-68, 451 A.2d at 672-674.

Substantially similar considerations govern this case. It may well be that the question of the propriety of Ms. DeHaven's dismissal is concluded by reference to Sections 904 and 906 of the Civil Service Act but this does not deprive the arbitrator of jurisdiction to decide the issue. The parties to this case have contracted to submit to arbitration questions arising from the dismissal of employees from the classified service, such a question was submitted for decision and the arbitrator had jurisdiction to decide it. We will therefore reverse the referee's order and remand the matter for the arbitrator's decision.

As we have indicated, the arbitrator also ordered that Ms. DeHaven be reappointed to her position without loss of seniority after one year. This facet of the decision is inconsistent with the arbitrator's determination that he did not have jurisdiction.[5] Moreover, by requiring reappointment, the arbitrator appears to have gone beyond the clear import of the submission. The submission, which we have set forth above in its entirety, expressly conditions the arbitrator's authority over the issue of an appropriate remedy upon a determination that the decision to discharge was not for just cause. The question of just cause remaining unanswered, the appropriateness of particular terms and conditions of discharge was not before the arbitrator for decision.

Of course, the authority of an arbitrator is wholly dependent on and derivative from the terms of the submission and an arbitrator may not decide matters not included therein. *Sley System Garages v. Transport Workers Union of America, AFL-CIO*, 406 Pa. 370, 178 A.2d 560 (1962). However, it is unnecessary for us to now decide this issue because we have held that the arbitrator here erroneously declined jurisdiction of the cause so that we must return the matter for further proceedings including, to the extent that such a decision is appropriate under the conditional terms of the submission itself, decision of all the issues submitted. We also need not decide issues raised by the State Civil Service Commission as amicus curiae having to do with whether an appointing authority could lawfully, under the Civil Service Act, reappoint Ms. DeHaven after one year under the circumstances here presented.

---

[5] This inconsistency finds expression in the submission itself which predicates resolution by the arbitrator of the merits of the dispute on an affirmative preliminary determination of the jurisdictional issue.

We therefore reverse the arbitrator's holding that he had no jurisdiction and remand this aspect of the case for a decision of the issue of whether there was just cause for the grievant's dismissal; and we vacate the arbitrator's order with respect to the reappointment of the grievant and remand for a resolution, or not, of that issue depending on whether it is concluded that there was or was not just cause for the dismissal.

### ORDER IN No. 2065 C.D. 1983

AND Now, this 2nd day of May, 1984, it is ordered that the arbitration award insofar as it determined that the arbitrator was without jurisdiction to decide the contractual propriety of the grievant's dismissal is reversed and the record is remanded for decision in arbitration of the matter of whether the grievant's discharge was for just cause, which will include determination of the issue involving the conflict, if any, between the public sector collective bargaining agreement and fundamental statutory policies of the Commonwealth. (*See Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A. 2d 671 (1982). The arbitrator's award insofar as it orders the grievant's reappointment is vacated and remanded for decision only if the arbitrator first decides that the discharge of the grievant was not for just cause. Jurisdiction is relinquished.

### ORDER IN No. 2209 C.D. 1983

AND Now, this 2nd day of May, 1984, it is ordered that the arbitration award insofar as it determined that the arbitrator was without jurisdiction to decide the contractual propriety of the grievant's dismissal is reversed and the record is remanded for decision in arbitration of the matter of whether the grievant's discharge was for just cause, which will include determination of the issue involving the conflict, if any,

between the public sector collective bargaining agreement and fundamental statutory policies of the Commonwealth. (*See Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A. 2d 671 (1982).) The arbitrator's award insofar as it orders the grievant's reappointment is vacated and remanded for decision only if the arbitrator first decides that the discharge of the grievant was not for just cause. Jurisdiction is relinquished.