**PLEASANT VALLEY SCHOOL DISTRICT**

v.

**Robert D. SCHAEFFER, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 11, 2011.

Decided Dec. 1, 2011.

Richard E. Burridge, Harrisburg, and Jeffrey Husisian, Wilkes–Barre, for appellant.

Robert Kidwell, Stroudsburg, for appellee.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Robert D. Schaeffer appeals, with permission, an interlocutory order of the Court of Common Pleas of Monroe County (trial court). The litigation concerns Pleasant Valley School District's challenge to a grievance arbitration award ordering

the District to reinstate Schaeffer to his teaching position. The trial court sustained the District's appeal and ordered a remand for additional hearings by the arbitrator to determine whether Schaeffer's reinstatement would violate public policy. The critical question before us is whether a reviewing court is permitted to use public policy concerns to revise the issue submitted by the parties for arbitration. Concluding that it cannot, we reverse.

The facts as found by the arbitrator follow. Schaeffer was a tenured teacher employed by the Lehighton School District for many years. In December 2004, he left Lehighton to begin a job with the Pleasant Valley School District as a special education teacher. In November 2005, Schaeffer was arrested for engaging in "misconduct" with a student during his employment at Lehighton. Arbitrator's Opinion and Award at 3 (Award at ____). The Award did not provide any specifics about the charges. In response, Pleasant Valley School District suspended Schaeffer indefinitely until exonerated of all criminal charges.

After a preliminary hearing in December 2005, the charges against Schaeffer were bound over for trial. In May 2006, Schaeffer entered the Accelerated Rehabilitative Disposition (ARD) program in lieu of entering a plea. On June 7, 2007, Schaeffer completed the ARD program; all charges against him were dismissed; and his criminal record was expunged. On June 22, 2007, Schaeffer informed the School District in writing of these facts and requested immediate reinstatement. On July 3, 2007, the School District responded, in writing, that the Pennsylvania Department of Education (Department) had initiated its own investigation into the matter that led to Schaeffer's arrest. Because the outcome of the Department's

investigation could affect Schaeffer's teaching certificate, the School District informed Schaeffer that his reinstatement would not take place until the Department's investigation was complete.

At the conclusion of the Department's investigation, Schaeffer agreed to a retroactive suspension of his Pennsylvania teaching certificate, from November 21, 2005, to June 30, 2008. However, as late as October 2008, the Department's website continued to state that Schaeffer's teaching certificate was suspended and that "allegations of inappropriate behavior with students" had been lodged against him. Award at 5. The website was corrected in December 2008.

On November 24, 2008, Schaeffer wrote to the School District. He explained that his teaching certificate had been reinstated and, again, requested reinstatement. On December 5, 2008, the School District's solicitor replied that Schaeffer would not be reinstated for the reason that he had abandoned his teaching position. The solicitor noted that Schaeffer never replied to the district's letter of July 3, 2007. Further, Schaeffer did not request reinstatement for almost five months after he had his certificate reinstated on July 1, 2008. Reproduced Record at 96a–97a (R.R. ____).

The Pleasant Valley Education Association filed a grievance on Schaeffer's behalf, and the matter proceeded to grievance arbitration. In the grievance, the Association asserted that the School District had failed to provide Schaeffer a due process hearing as required by the collective bargaining agreement and the Public School Code of 1949.[1] Both guarantee a tenured teacher notice of the specific charges against him and a full evidentiary hearing before the teacher can be dismissed.[2] The

---

**1.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

**2.** Appendix B, paragraph 17 of the collective bargaining agreement states in relevant part

School District responded that a hearing was not required because it did not prevent Schaeffer from returning to work; rather, he abandoned his position. The Association and the School District agreed to the following statement of the issues to be decided by the arbitrator:

Did the Pleasant Valley School District [b]reach the collective bargaining agreement and/or the Pennsylvania School Code by refusing to allow the grievant, Robert Schaeffer to return to work on November 24, 2008? If so, what shall the remedy be? Alternatively, did Robert Schaeffer "abandon" his employment as that term is defined under the law? If not, what shall the remedy be?

Award at 6.

After a hearing, the arbitrator sustained the grievance. He found, as fact, that Schaeffer did not abandon his employment and, therefore, the School District violated the collective bargaining agreement by denying him a hearing. The arbitrator ordered the School District to reinstate Schaeffer to his teaching position with back pay and benefit credits retroactive to November 24, 2008. The School District appealed, arguing: (1) that the arbitrator's award was not rationally derived from the collective bargaining agreement; and (2) that the arbitrator's award violated public policy because a teacher disciplined for inappropriate behavior should not be placed back into the classroom. The trial court sustained the School District's appeal on the basis of the public policy exception and remanded the matter to the arbitrator for additional fact-finding.

In reviewing the award, the trial court applied the deferential "essence test." It provides that an arbitration award will be upheld if: (1) the issue as properly defined is within the terms of the collective bargaining agreement; and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). The trial court concluded that the parties' dispute was defined within the terms of the collective bargaining agreement and that the arbitrator's interpretation was rationally derived from the collective bargaining agreement. Accordingly, it agreed that the School District violated the collective bargaining agreement by not providing Schaeffer a hearing. However, there is a public policy exception to the essence test, which the trial court also considered.

In *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (2007)(*Westmoreland I*), our Supreme Court established the principle that a grievance arbitration award will be set aside if it violates a well-defined public policy. The Supreme Court stated its holding as follows:

[W]e hold that upon appropriate challenge by a party, a court should not enforce a grievance arbitration award that contravenes public policy. Such public policy, however, must be well-defined, dominant, and ascertained by

---

that "[d]ischarged tenured employees will be afforded all rights and privileges of the School Code." R.R. 76a.

Under the School Code, before being dismissed, a tenured teacher is entitled to receive a detailed statement of disciplinary charges from the Board of School Directors; participate in a full public and evidentiary hearing before the Board; and have a vote on his dismissal by the Board. Sections 1126–1129 of the School Code, 24 P.S. §§ 11–1126–11–1129. In addition, pursuant to Section 1122 of the School Code, a tenured teacher can only be dismissed for specific reasons, not for general improper behavior. 24 P.S. § 11–1122.

reference to the laws and legal precedents and not from general considerations of supposed public interests.

*Id.* at 666, 939 A.2d at 865–866. The trial court agreed with the School District's premise that it would violate a "well-defined, dominant" public policy to place a teacher in the classroom who had engaged in predatory behavior with a student.

However, the arbitration record was devoid of any evidence on the specifics of Schaeffer's conduct, for which he received ARD and a 31–month teaching certificate suspension from the Department. The trial court held that the absence of this evidence was unacceptable:

> [A]llowing a teacher who was charged with misconduct with a student to return to the classroom without a determination of what actually occurred would not discourage such misconduct and would undermine the ability of the school to provide a safe place for special needs students to attend school. No parent of a special needs child would be satisfied with the return of a person who has been suspended for 31 months by the Department of Education to teach their child without knowing what his infraction was, especially when it had to do with "misconduct with a student."

Trial Court Opinion at 16. Accordingly, the trial court remanded the matter to the arbitrator "for an additional hearing on the reasons why Robert D. Schaeffer was suspended from teaching, and whether his reinstatement would violate public policy," with the burden of proof upon the School District. Trial Court Order at ¶ 2.

Schaeffer requested that the trial court certify its interlocutory order for appeal, but it refused. However, by order of January 10, 2011, this Court allowed Schaeffer's interlocutory appeal under authority of Pennsylvania Rule of Appellate Procedure 1311.[3]

On appeal, Schaeffer argues that the trial court erred because the issue on which it ordered a remand was not submitted to the arbitrator to decide. Schaeffer also argues that the trial court erred in considering the public policy exception because the School District did not discharge Schaeffer for misconduct or for committing a crime but, rather, for abandonment.

■ It is well-settled that an arbitrator's power is limited to the issues presented in the arbitration. *American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO v. City of Beaver Falls*, 74 Pa.Cmwlth. 136, 459 A.2d 863, 866 (1983). The arbitrator "can bind parties only on *issues they have agreed to submit to him.*" *Id.* (emphasis added). As our Supreme Court has explained:

> The power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submission. To put it another way, their powers, being derived from submission, are measured by it.

**3.** The note to Rule 1311 states, in relevant part:

Where the administrative agency or lower court refuses to amend its order to include the prescribed statement [that immediate appeal would be helpful], a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as

to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. If the petition for review is granted in such a case, the effect ... is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

PA. R.A.P. 1311, note.

*Sley System Garages v. Transport Workers Union of America,* 406 Pa. 370, 374, 178 A.2d 560, 561 (1962).

Here, the issue submitted to the arbitrator was a simple one: whether Schaeffer abandoned his teaching job and thereby waived his right to a hearing and the protections of the Public School Code of 1949. The arbitrator appropriately limited his inquiry to the factual question of whether Schaeffer had abandoned his position. Notably, the School District's December 5, 2008, letter to Schaeffer did not mention his ARD, his teaching certificate suspension or the misconduct on which those sanctions were based. The only stated basis for the School District's refusal to reinstate Schaeffer was his abandonment of the position. The trial court's criticism of the arbitrator for not taking evidence on Schaeffer's alleged misconduct is misplaced. It was the School District that failed to place the issue of misconduct before the arbitrator.

■ The question, then, is whether the public policy exception can be raised, for the first time, on appeal. The School District argues that it did not have to submit the public policy exception to the essence test because it is implicit in every arbitration proceeding. The School District contends that it is not the specific conduct of the grievant that triggers the public policy analysis but, rather, the grievance award, which cannot be known until the award is rendered.

Schaeffer responds that the public policy exception must be based upon the facts as found by the arbitrator, and those factual findings are constrained by the issue submitted to him. The facts, as found, must demonstrate "serious and proven misconduct." Schaeffer's Brief at 26. Here, the issue of misconduct was never before the arbitrator and, thus, the factual findings needed for application of the public policy exception are missing. Schaeffer argues

that it was error for the trial court to consider an issue raised after-the-fact. In any case, Schaeffer notes that his alleged misconduct cannot be decided, in the first instance, in arbitration. Rather, it must be decided in a hearing that conforms to the Public School Code of 1949. The School District neither gave Schaeffer a detailed written statement of charges against him nor a hearing, which are guaranteed to him. To proceed immediately to arbitration would deprive him of these rights.

This case has nothing to do with the substance of the public policy exception to the essence test but, rather, the procedure by which it can, and should, be invoked by the public employer. Since the Supreme Court's decision in *Westmoreland I,* there have been several decisions on the public policy exception to the essence test. They include *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA–NEA,* 977 A.2d 1205, 1211–1212 (Pa. Cmwlth.2009) (on remand) (holding that an award reinstating a classroom assistant who had overdosed on drugs at school "violated a well-defined, dominant public policy to protect school children from illegal drugs and drug use"); *Shamokin Area School District v. American Federation of State, County, and Municipal Employees District Council 86,* 20 A.3d 579 (Pa. Cmwlth.2011) (holding that an award reinstating an employee, after a suspension, for making threatening remarks about a supervisor did not violate the public policy exception); and *City of Bradford v. Teamsters Local Union No. 110,* 25 A.3d 408 (Pa.Cmwlth.2011) (holding that an award reinstating a garbage collector, after a suspension, for committing theft on the job did not violate the public policy exception). In each case, the public employer had discharged the employee for misconduct after

a hearing, and in each case the issue submitted to the arbitrator was whether there was just cause for the discharge. Accordingly, the arbitrator made specific findings about the grievant's misconduct, and those findings formed the foundation to the analysis of the public policy exception. This case is different.

The School District did not dismiss, or decline to reinstate, Schaeffer for misconduct. It claimed that Schaeffer had abandoned his teaching position. As a result, the arbitration proceeding had nothing to do with Schaeffer's alleged misconduct. However, the trial court reviewed the reinstatement on the basis of misconduct. Stated otherwise, the trial court reframed the issue submitted to grievance arbitration, transforming the issue from abandonment to misconduct. In effect, the trial court is giving the School District a "do over" on an issue that it could have raised but did not.

■■ The public policy exception does not bestow upon a reviewing court the power to alter the rules of arbitration. A court simply cannot order a remand for more findings where the arbitrator had not been empowered by the parties to make those findings. *See, e.g., Commonwealth of Pennsylvania v. Joint Bargaining Committee of Pennsylvania Social Services Union,* 82 Pa.Cmwlth. 200, 475 A.2d 1333, 1338 (1984) (remanding to the arbitrator for further proceedings limited to the issues submitted to him by the parties). The issue must be framed by, and limited to, the parties' submission to the arbitrator. The public policy exception has not changed that. Accordingly, we hold that the public policy exception to the essence test must be constrained by the issues placed before the arbitrator and the facts as found by him.

In this case, the arbitrator found that Schaeffer did not abandon his job, and abandonment does not implicate the public policy exception. The School District is not precluded from initiating a disciplinary proceeding under the School Code against Schaeffer for alleged misconduct. Should that process result in Schaeffer's termination, he can proceed to grievance arbitration to determine whether there was just cause. The public policy exception might be applicable to the resulting grievance arbitration award, assuming it results in a reinstatement.

There is another important consideration. Schaeffer's statutory rights would be violated if his dismissal went straight to arbitration. Our Supreme Court has explained that the dismissal of a tenured teacher is valid only if the school district acts in full compliance with the "explicit procedural safeguards" guaranteed to the employee by the School Code. *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 547–548, 462 A.2d 629, 636 (1983). The parties' collective bargaining agreement requires the School District to give Schaeffer a hearing conducted in accordance with the Public School Code of 1949 before it can discharge him. This did not occur. The School District cannot use arbitration as a way to bypass the hearing procedures guaranteed Schaeffer by the collective bargaining agreement and the Public School Code of 1949.

For these reasons, the order of the trial court is reversed, and the arbitrator's award is reinstated.[4]

## ORDER

AND NOW, this 1st day of December, 2011, the order of the Court of Common

---

4. Schaeffer advances additional arguments in his brief, including the assertion that the trial court erroneously vacated the award on the basis of ill-defined and general public interests. Based on our disposition of the case, we need not discuss them.

Pleas of Monroe County dated September 30, 2010, in the above captioned matter sustaining the Pleasant Valley School District's appeal is hereby REVERSED.