### Laurence HAMMOND

v.

### SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2015.

Decided May 1, 2015.

Richard E. Stabinski, Philadelphia, for appellant.

James M. Duckworth, Philadelphia, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and MARY HANNAH LEAVITT, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

. OPINION BY Judge MARY HANNAH LEAVITT.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) overruling SEPTA's preliminary objection seeking the dismissal of the complaint filed by Laurence Hammond (Hammond).[1] SEPTA sought to compel arbitration in accordance with an agreement of the parties to arbitrate Hammond's claim for damages. The trial court refused because Hammond had invoked a revocation clause in the Arbitration Agreement. SEPTA contends that the trial court erred, *inter alia,* because Hammond's ability to revoke arbitration was a matter for an arbitrator, not the trial court, to decide. For the reasons that follow, we reverse the order of the trial court.

On April 13, 2012, Hammond was working as a SEPTA conductor when he injured his shoulder while in the course and scope of his employment. This injury gave rise to a personal injury claim against SEPTA under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. To reduce the delays, expense, and uncertainties of litigation, the parties agreed to resolve Hammond's claim by arbitration.

---

1. An appeal may be taken from "[a] court order denying an application to compel arbitration. . . ." 42 Pa.C.S. § 7320(a)(1).

Their Arbitration Agreement contained the following revocation clause:

> Neither Party shall have the right or power to revoke the Agreement without the consent in writing of the other Party. *However, either Party may revoke the Agreement in the event that by the close of discovery* the Parties do not agree on the minimum (low) and maximum (high) amounts of the actual award and, if [Hammond] claims a permanent disability that precludes his/her return to work at SEPTA, [Hammond] does not agree to resign from the employ of SEPTA and release future medical payments and future indemnity payments under the Workers' Compensation Act.[2]

Reproduced Record (R.R. ——) at 61a–62a (emphasis added).

On January 21, 2014, the Arbitrator entered a Case Management Order directing the completion of discovery by February 28, 2014, and scheduling the hearing for March 21, 2014. On March 19, 2014, Hammond advised the Arbitrator and SEPTA that he was unilaterally revoking the arbitration agreement and discontinuing arbitration under authority of the revocation clause. Hammond further stated, for the first time, that he was claiming a permanent disability that precluded his return to work, even though Hammond had not resigned from his employment and was still working.

On March 20, 2014, Hammond filed a FELA complaint against SEPTA in the trial court. SEPTA responded by filing a preliminary objection that the court lacked jurisdiction over the FELA complaint by reason of the Arbitration Agreement. SEPTA asserted that Hammond did not effectively revoke the Arbitration Agreement because he did not prove the existence of a permanent disability "by the close of discovery." Hammond countered that the "by the close of discovery" requirement pertained only to a lack of agreement on the minimum and maximum of the award; he argued that there was no time limit to his ability to revoke arbitration when he did so on the basis of an asserted permanent disability. SEPTA responded that this was an absurd construction of the revocation clause because it would allow Hammond to revoke during or even after the arbitration hearing and move the dispute to court if the arbitration hearing did not go well. SEPTA also argued that it was for the Arbitrator to decide the meaning of the revocation clause.

On June 30, 2014, the trial court overruled SEPTA's preliminary objection. On August 11, 2014, the trial court filed its opinion. The trial court framed the issue as follows:

> [T]he parties agree a valid arbitration agreement exists and [Hammond's] claim falls within the scope of said agreement. The dispute in this matter turns on whether [Hammond] properly revoked the Arbitration agreement.

Trial Court Opinion at 3. Concluding that the revocation clause was "ambiguous," the trial court concluded that the "by the close of discovery" limitation applied only to reaching the high/low requirement and not to Hammond's claim of disability. Therefore, Hammond's revocation was not untimely. The trial court also concluded that the Arbitration Agreement did not require Hammond to prove a disability. For these reasons, the trial court overruled SEPTA's preliminary objection.

On appeal,[3] SEPTA raises three assignments of error. First, SEPTA contends

---

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

3. Our review of the trial court's order is to determine whether the trial court violated

that the trial court was required to sustain SEPTA's preliminary objection once it determined that Hammond's claim for damages was governed by the terms of the Arbitration Agreement; any purported ambiguities therein are for the Arbitrator to decide. Second, SEPTA asserts, in the alternative, that the trial court misinterpreted the revocation provision. Third, SEPTA argues that the trial court erred in not resolving ambiguity in the Arbitration Agreement in favor of arbitrability. Hammond disagrees in all respects.

■■■ We begin our analysis by noting that Pennsylvania law favors arbitration. *Hazleton Area School District v. Bosak,* 671 A.2d 277, 282 (Pa.Cmwlth.1996). However, because arbitration is "a matter of contract," "absent an agreement between the parties to arbitrate an issue, the parties cannot be compelled to arbitrate that issue." *Lincoln University of the Commonwealth System of Higher Education v. Lincoln University of the American Association of University Professors,* 467 Pa. 112, 354 A.2d 576, 580 (1976). "[J]udicial inquiry as to whether arbitration is appropriate is limited to the following two questions: (1) whether an agreement to arbitrate was entered into; and (2) whether the involved dispute comes within the ambit of an arbitration provision." *Hazleton,* 671 A.2d at 282. If both questions are answered affirmatively, the trial court's inquiry ends, and the arbitrator is responsible for resolving further disputes. *See Ross Development Co. v. Advanced Building Development Inc.,* 803 A.2d 194, 196 (Pa.Super.2002).

SEPTA argues, first, that the question of whether Hammond effectively revoked the Arbitration Agreement is a question that can be answered only by the Arbitrator. In support, SEPTA relies upon the

Pennsylvania Superior Court's decision in *Santiago v. State Farm Insurance Co.,* 453 Pa.Super. 343, 683 A.2d 1216 (1996). The plaintiff, Santiago, suffered injuries in an automobile accident. The tortfeasor's insurance carrier paid Santiago up to its policy limit, at which point she applied to her own insurance provider for underinsurance compensation. The insurance provider denied the claim, and she filed a motion to compel arbitration in Pennsylvania.

The insurance provider challenged Santiago's motion and argued that only a New Jersey court could compel arbitration because the arbitration agreement stated that "[t]he arbitration shall take place in the county in which the insured resides." *Santiago,* 683 A.2d at 1217. The insurance provider interpreted the provision as meaning that arbitration could take place only in the county where Santiago lived *at the time she entered into the arbitration agreement,* which was in New Jersey. Santiago countered that the provision meant that arbitration could be ordered where she lived *at the time of the accident,* which was Pennsylvania. The trial court agreed with the insurance provider and denied the motion to compel arbitration.

On appeal, Santiago argued that the trial court misinterpreted the arbitration agreement. The Superior Court, however, rejected this invitation to interpret the arbitration agreement. Instead, the court explained:

> We will neither agree nor disagree with the trial court's interpretation of the policy language at issue because interpretation of disputed or ambiguous terms within the contract was not an appropriate function for the court to have taken at that time.... When it

---

constitutional rights, abused its discretion, or committed an error of law. *Hazleton Area*

*School District v. Bosak,* 671 A.2d 277, 281 (Pa.Cmwlth.1996).

became apparent that [an arbitration] agreement did exist, the court should have ordered arbitration. *It is for the arbitrators to interpret the relevant policy provisions....* *Santiago*, 683 A.2d at 1218 (emphasis added). The court concluded, "it was premature for [the trial court] to make factual findings and interpret what is apparently ambiguous language in the policy. Since the [trial] court found the parties had an agreement to arbitrate, its task was complete and arbitration should have been ordered." *Id.* at 1219.

■ Though not bound by *Santiago*, we are persuaded by its reasoning. In the matter *sub judice*, the trial court stated that "the parties agree a valid arbitration agreement exists and [Hammond's] claim falls within the scope of said agreement." Trial Court Opinion at 3. This affirmatively answers the two questions the trial court is authorized to consider: "(1) whether an agreement to arbitrate was entered into; and (2) whether the involved dispute comes within the ambit of an arbitration provision." *Hazleton*, 671 A.2d at 282. Because both questions were answered affirmatively, the trial court's analysis should have concluded. Instead, the trial court went on to consider "whether [Hammond] properly revoked the Arbitration Agreement pursuant to" the Agreement's revocation clause. Trial Court Opinion at 3. This required the trial court to engage in arbitration agreement interpretation, which is a job for the arbitrator.

Hammond argues that *Santiago* is distinguishable because it did not involve a revocation clause in an arbitration agreement. Hammond contends that because the issue of revocation goes to the exis-

tence of whether there is an agreement to arbitrate, the trial court has the authority to determine whether an arbitration agreement has been revoked. Therefore, Hammond asserts that "[i]f properly revoked[,] this matter is outside the scope of the agreement." Brief of Hammond at 6.

Hammond's argument is flawed because it requires a determination that the Arbitration Agreement was "properly revoked." Whether the Arbitration Agreement was properly revoked requires an interpretation of the arbitration agreement, and such questions are for arbitrators, not the courts, to resolve. Therefore, the trial court was required to sustain SEPTA's preliminary objection, and the trial court erred in otherwise holding.

For this reason, we reverse the trial court's order and sustain SEPTA's preliminary objection.[4]

### ORDER

AND NOW, this 1st day of May, 2015, the order of the Court of Common Pleas of Philadelphia County dated July 13, 2014, in the above-captioned matter is REVERSED and Southeastern Pennsylvania Transportation Authority's preliminary objection is SUSTAINED.

### DISSENTING OPINION BY Senior Judge ROCHELLE S. FRIEDMAN.

I respectfully dissent. Because I disagree with the majority's conclusion that there remains a valid Arbitration Agreement between Hammond and SEPTA and that the dispute is within the scope of the Arbitration Agreement, I would affirm.

---

4. Because the arbitrator is the one designated by law to interpret provisions of the arbitration agreement, this Court may not consider SEPTA's second argument that the trial court's interpretation is erroneous. Similarly, because we granted SEPTA's motion, we need not consider its third argument.

In determining whether arbitration is appropriate, "the trial court may only address questions of substantive arbitrability such·as whether there is a valid arbitration agreement and whether the disputed claim is within the scope of that agreement." *Ross Development Company v. Advanced Building Development, Inc.*, 803 A.2d 194, 199 (Pa.Super.2002). "[T]he question of substantive arbitration is for the courts while procedural arbitration is left to the arbitrators."[1] *Id.* at 197. The trial court is the appropriate forum for deciding whether a dispute is covered by the terms of an arbitration agreement. *Hazleton Area School District v. Bosak*, 671 A.2d 277, 281 n. 9 (Pa.Cmwlth.1996).

The Arbitration Agreement provides that a party can revoke the agreement upon written consent of the parties or if "by the close of discovery the Parties do not agree on the minimum (low) and maximum (high) amounts of the actual award." (Arbitration Agreement, 4/22/13, ¶ 2.B. at 1–2.) The trial court considered Hammond's revocation of the Arbitration Agreement and determined that because the parties failed to agree on the low/high amounts of the actual award by the close of discovery, Hammond properly invoked the Arbitration Agreement's revocation clause.

Because the Arbitration Agreement was revoked, there was no valid Arbitration Agreement and the dispute fell outside of the scope of the Arbitration Agreement. Thus, the dispute was properly before the trial court. The trial court correctly determined that it was the proper forum to decide the validity of the Arbitration Agreement and whether the dispute fell within the terms of the Arbitration Agreement. Accordingly, I would affirm.[2]

---

**1.** Substantive law is "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties." Black's Law Dictionary 1567 (9th ed. 2009). Procedural law is "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Id.* at 1323.

[T]he determination of whether [a] matter is subject to arbitration is within the jurisdiction of the trial court.... In a proceeding to stay or to compel arbitration, the question of whether the parties agreed to arbi-

trate, commonly referred to as "substantive arbitrability," is generally one for the courts and not for the arbitrators.
*Ross*, 803 A.2d at 196.

**2.** I would further conclude that the trial court correctly held that the revocation clause was ambiguous and in resolving such ambiguity in favor of the non-drafting party. Therefore, I believe that Hammond met the revocation requirements when the parties failed to agree on the low/high amounts of the actual award before the close of discovery.